## McFARLAN *vs.* WATSON.

Between the lessor and the under tenant of the original lessee there is neither privity of estate nor privity of contract; and therefore the lessor can not sue the under tenant upon the lessee's covenant to pay rent.

But where a lease was executed for a year at a quarterly rent, and the defendant, who entered under the lessee at the commencement of the term and occupied for the whole year, paid the three first quarters' rent to the agent of the lessor,

McFarlan *v.* Watson.

and took receipts from him as such agent; *held*, that a jury might infer an agreement to pay the rent to the lessor so as to sustain an action in his name for use and occupation during the last quarter of the term.

McFarlan sued Watson in the superior court of the city of New-York, and declared in assumpsit for use and occupation. On the trial before Oakley, C. J. in April, 1848, it was proved that the plaintiff owned a house at New Brighton, Staten Island, which the defendant occupied from May 1, 1846, to May 1, 1847. The rent for the first three quarters of that year, was paid by the defendant, to Richard Oakley, who gave receipts as follows :

" New-York, August 5, 1846. Received from Mr. William Watson, seventy-five dollars, on account of rent of cottage occupied by him at New Brighton, rented by H. H. Elliott.

For the owners,

RICHARD OAKLEY."

" New-York, 10 November, 1846. Received from Mr. William Watson, eighty-one 25-100 dollars, in full, for one quarter's rent of cottage occupied by him. Rented to H. H. Elliott. Due 1st instant. For Henry McFarlan,

RICHARD OAKLEY, Agent."

" New-York, 11 February, 1847. Received from William Watson, Esq., eighty-one 25-100 dollars in full for one quarter's rent of cottage occupied by him at New Brighton, due 1st inst.

For Henry McFarlan,

$81,25.                      RICHARD OAKLEY, Agent."

The rent for the last quarter remained unpaid at the commencement of the action, and amounted to $81,25, which sum the plaintiff claimed to recover.

On the part of the defendant, it was proved, that on the 3d of April, 1846, Oakley, the agent aforesaid, rented the premises by written lease to one Elliott, for the year commencing on the first of May, then ensuing ; that, after this lease was executed to Elliott, the defendant presented to the agent a written request from Elliott as follows :

"New-York, April, 10, 1846.

R. Oakley, Esq. Dear Sir: Be good enough to arrange with Mr. Watson, giving him the lease for the house at New Brighton, which I took for myself, and oblige,

Yours truly,     H. H. ELLIOTT."

The agent distinctly refused to comply with this request, or to rent the premises to the defendant. The defendant went into possession on the first of May, and the evidence tended to show that he entered under Elliott. The evidence of J. M. Watson, the defendant's brother, also tended to show that when the plaintiff's agent received the first quarter's rent he claimed to have authority from Elliott to receive the payment.

The defendant's counsel requested the court to charge the jury, that if they found that the plaintiff had leased the premises to Elliott, and that Elliott had underlet them to the defendant, or the defendant was the assignee of Elliott, the plaintiff could not recover. The court so charged, but further charged, that if from the receipts and other evidence in the case, they believed there was an agreement on the part of the defendant, with the consent of Elliott, to pay rent to the plaintiff for any period, including the unpaid quarter, the plaintiff was entitled to recover, notwithstanding the original lease to Elliott. The defendant excepted to this part of the charge. The jury found for the plaintiff, and after judgment the defendant appealed to this court.

*S. Beardsley*, for appellant.

*N. Hill, Jr.* for respondent.

RUGGLES, J. Between the lessor and the under tenant of the original lessee, there is neither privity of estate nor privity of contract; the lessor therefore can not sue the under tenant upon the lessee's covenant to pay rent. In the present case, the lease by the plaintiff to Elliott was not by deed; but the defendant entered under Elliott, and it was necessary for the plaintiff on the trial to show some privity of contract between

himself and the defendant, that is to say; some promise by the defendant, express or implied, to pay the rent to the plaintiff. The action for the use and occupation of the premises could not otherwise be maintained by the plaintiff.

The case was put upon this ground in the court below, in the charge to the jury. The only question therefore, is, whether there was evidence proper to be submitted to the jury of the defendant's promise, express or implied, to pay the rent to McFarlan, the plaintiff.

I think there was such evidence. The defendant paid the first three quarters' rent to Oakley, the agent of the plaintiff, and none of it to Elliott, under whom he now claims to have held the premises. Elliott resided in the city of New-York, and the rent might as conveniently have been paid to him as to the plaintiff's agent; and no good reason is shown why the rent was not paid to Elliott, if the defendant did not intend to recognize McFarlan, the owner, as his landlord. The receipt for the first quarter's rent, due on the first of August, is signed by Richard Oakley, as the agent " of the owner." The receipts for the next two quarters are signed, " For Henry McFarlan, Richard Oakley, agent." The last receipt contains no recognition of the lease to Elliott, but is drawn, in all respects, as if the defendant Watson was the immediate tenant of McFarlan. *John M. Watson's* testimony does not materially contradict the effect of the first receipt. He says, that when he paid the first quarter's rent on the 5th of August he had understood that Elliott was the agent of the owner of the house, and he wanted a receipt that would show the rent was paid to Oakley as the agent of Elliott, and the rest of the owners. This is not very easy to understand. McFarlan was the owner, and Elliott was his immediate lessee, under whom he says the defendant claimed to hold. But he insisted, it seems, on an acquittance from McFarlan, and he obtained it. The receipt was such an acquittance, but it was not in its terms an acquittance from Elliott.

These payments, and especially the last of the three, afford a strong presumption that the defendant, by the assent of Elli-

ott had become the immediate tenant of the premises under McFarlan. Men do not often pay their debts to persons not entitled to receive the money, or take discharges from those who have no authority to give them. If the defendant was, and continued to be the tenant of Elliott, and not of McFarlan, the payments to McFarlan did not discharge the defendant from his liability to Elliott. The only authority from Elliott for the payments to McFarlan, is contained in his letter to Oakley, of the 10th of April, 1846, in which he requests Oakley to arrange with the defendant, by giving him the lease of the house; and although he refused to do this at the time, the payments and receipts for the rent are strong presumptive evidence that it was afterwards assented to, so far at least, as respects the year for which Watson appears to have taken the house.

There was nothing erroneous in denying the motion for a nonsuit, or in the charge to the jury.

Judgment affirmed.