KIERSTED *et al.* v. ORANGE AND ALEXANDRIA RAILROAD COMPANY, appellants.

*Principal and agent — lease to agent — when principal not bound by — use and occupation.*

Plaintiffs entered into an agreement under seal with S., whereby they leased to him certain premises. In the lease S. was described as the general agent of defendants; but the lease was executed in his individual name. S. occupied the premises, in transacting defendants' business, from November, 1860, to April, 1861, when he was removed from his agency by defendants, and a successor was appointed. The new agent occupied the premises until February, 1862. S. paid the rent up to May 1, 1861. In an action against defendants for the rent remaining unpaid, *held* that the lease was not binding upon defendants; and if the action could be maintained "it must be upon the theory that when the lessee was removed he abandoned the possession of the premises, with the understanding that they should afterward be occupied by defendants; that they should protect him from liability for the rent by paying it themselves, and that they accepted and occupied the premises by his successor, as their agent, upon those terms."

APPEAL from a judgment in favor of plaintiffs, entered upon the report of a referee. The opinion states the facts.

*J. C. Jackson*, for appellants.

*T. C. Cronin*, for respondents.

DANIELS, J. The recovery had in this action was for the use and occupation of leasehold premises situate in the city of New York, leased by the plaintiffs to the agent of the defendants. The lease was made the 1st day of November, 1860, and the term created by it extended from that date until May 1st, 1863. The lessee was described in it as general agent of the Virginia and Tennessee route, comprising the railroads of the defendants. But the premises were leased directly to him, and he alone covenanted to pay the rent reserved by it. He and the plaintiffs respectively executed it under seal.

By its terms it was binding solely upon them. And one of the plaintiffs, who was examined as a witness upon the trial, testified that it was understood to be sufficient and binding without any further signature to it, and that he did not consider it necessary that any other signature should be added to it, and that he never requested the indorsement of any of the offices of the railroad companies upon it, so that the demise, from the evidence as well as the lease, appeared to have been designed as the lease showed it to have been made. And, as between the plaintiffs and the lessee, the term created by it was effectually vested in him. He occupied the premises under the lease for some months after its date, as the agent of the route, but left them about the 3d or 4th of April, 1861; a day or two before he left, and on the 2d of that month, their agent, appointed by the defendants, took charge of the premises and remained there. When the lessee was removed and ceased to be the agent of the route, the premises were under the control of a clerk in his employment, who remained there until after the succeeding agent took possession. Before he went into possession, the lessee was removed by the agent of the route, and the second agent was appointed in his place; and he afterward occupied the demised premises in that capacity. How long he occupied them does not appear clearly from the evidence given by him. But no other person seems to have been at any time appointed in his place; and the plaintiff, who was sworn on the trial, testified that the defendants ceased to occupy the premises about the 12th day of February, 1862. The premises were occupied as a ticket-office for the defendants' route. The plaintiff testified that the rent was paid by the lessee up to the 1st of May, 1861. And it appeared by the evidence of the president of the Orange and Alexandria Railroad Company that his company contributed

its proportion of the amount paid. It also appeared that the second agent was paid for his services by the defendants, and that monthly reports of the business were made as late as the month of April, 1861. The plaintiff, who was sworn, testified that he never had any relations with the second agent, concerning the lease; did not ask him for the rent, and received none from him. It appeared from the evidence given by this agent that the officers of the defendants were in New York in April, 1861, for the purpose of arranging certain matters, requiring their attention, relating to the business of the route, and including the lease given by the plaintiffs; but they left without accomplishing any thing, on account of the difficulties which had then arisen between the southern States and the general government, passing through Baltimore, on their return, by the train preceding the April riot in that city. The lessee himself did not return to the demised premises, and died in the year 1864. These are the facts as they appear to be sustained and exhibited by the evidence. The referee reported in favor of the plaintiffs for the rent accruing between the 1st of May, 1861, up to which time it was paid, and the 12th of February, 1862, when they resumed possession of the demised premises, and interest upon the same.

From the manner in which the lease was taken and executed, the covenants contained in it were binding upon the lessee, and not upon the defendants as his principals. They were his covenants and not theirs. *Taft* v. *Brewster,* 9 Johns. 334; *Stone* v. *Wood,* 7 Cow. 453; *Guyon* v. *Lewis,* 7 Wend. 26; *Spencer* v. *Field,* 10 id. 87; *Smith* v. *Van Nostrand,* 5 Hill, 419.

But when he was removed from his position as the defendants' agent, and the demised premises were taken possession of by his successor, a very different state of things came at once into existence. Then, by their newly appointed agent to take charge of the business designed to be transacted there, they took the actual possession of the leasehold estate. It seems to have been abandoned by the lessee upon his removal from his position, and the occupancy and control of it taken by his successor for the defendants. This does not appear to have been done by reason of any assignment, in writing, of the lease and term created by it, as the statute required to render it effectual. 3 R. S. (5th ed.) 220, § 6. And for that reason the defendants did not become liable as assignees. But it may be reasonably inferred from what transpired that the lessee

allowed the defendants to possess and occupy the premises leased by his successor, because he had acquired them only for the purposes of his agency, at the expense and for the benefit of the defendants. The occupancy, after that, was simply that of the defendants, and may be presumed from the circumstances to have been permitted by the lessee, and enjoyed by the defendants, upon the understanding that the rent should afterward be paid by them. And an occupancy with such an understanding would be sufficient to render the defendants liable for use and occupation under the provisions of the statute of this State (3 R. S. [5th ed.] 37, § 20), because it would sustain the conclusion that the defendants had assumed to pay the rent accruing to the plaintiffs during the period of their occupancy. And from that, under the circumstances, a promise to pay could lawfully and properly be inferred, which would sustain a recovery for use and occupation. The action for use and occupation is sustained by a privity of contract, either express or implied. And the contract may be implied from circumstances reasonably warranting the conclusion of its existence. For that purpose, occupancy with the consent of the landlord, or the payment of rent by an under-tenant, will ordinarily be sufficient. *Porter* v. *Bleiler*, 17 Barb. 149; *McFarlan* v. *Watson*, 3 N. Y. 286.

When the premises were abandoned by the lessee, without an assignment or transfer of the lease, but simply leaving it, as he did, with the rest of the papers appertaining to the business, and the defendants took the actual possession by their succeeding agent, the lease itself was not an element existing between the plaintiffs and them. They undoubtedly assumed possession, because the premises had been rented for them by the lessee, and they would have been liable, as long as they were used by him in their business, to have protected him against his covenants for the payment of the rent — certainly, so far as to re-imburse him for whatever he might be compelled to pay for that purpose. And, as they assumed possession when he was discharged, without acquiring a transfer of the lease, it must have been upon the understanding that they would protect the lessee against the plaintiffs' demand for the rent under his covenant to pay it, by making payment of it themselves.

That, within all the cases, would be sufficient to maintain an action for use and occupation, because a promise to pay it could be implied, from those circumstances, in the plaintiffs' favor. That implied understanding, with the occupancy, would be sufficient for

that purpose. *Corporation of New York* v. *Dawson*, 2 Johns. Cas. 335; *Smith* v. *Stewart*, 6 Johns. 46; *Bancroft* v. *Wardwell*, 13 id. 489; *Featherstonhaugh* v. *Bradshaw*, 1 Wend. 134; *Little* v. *Martin*, 3 id. 219; *Williams* v. *Sherman*, 7 id. 109; *Wood* v. *Wilcox*, 1 Denio, 37; *Croswell* v. *Crane*, 7 Barb. 191; *Hall* v. *Southmayd*, 15 id. 32; *Pierce* v. *Pierce*, 25 id. 243; *Sylvester* v. *Ralston*, 31 id. 286; *Thompson* v. *Bower*, 60 id. 463; *Lawrence* v. *Fox*, 20 N. Y. 268; *Dingeldein* v. *Third Ave. R. R. Co.*, 37 id. 575; *Hutchings* v. *Miner*, 46 id. 456. And the liability of the defendants as occupants, when created in that way, would continue as long as they retained the actual or constructive control and possession of the demised premises. *Hall* v. *Western Transportation Company*, 34 N. Y. 284. And during that continuance it would not be interrupted by a state of war existing between the general government and the States under whose laws the defendants were created and existed. For as long as they possessed and occupied the premises, they would be bound to pay, notwithstanding such an occurrence.

But while the facts are sufficient to warrant the conclusion that the defendants rendered themselves liable to the action for use and occupation during the continuance of their occupancy, the referee has deduced no such conclusion from them; for, while he has decided and found that they were the tenants of the plaintiffs, he qualified that conclusion so far by the following one (in which he states that they entered under a lease by indenture of deed, executed by the plaintiffs, on the 1st of November, 1860, to one Smith, their lawful agent, executed by him in his individual name, and were permitted to occupy on his undertaking that they would ratify the lease so as to render it binding and obligatory on them, but never did so) as to show that no tenancy existed between the plaintiffs and defendants. These facts show an entry into the possession by the defendants under a special agreement between the plaintiffs and the agent of the defendants, by which the defendants were to render the lease obligatory upon themselves in a particular manner, and that they never afterward did so. They show no liability whatever to the plaintiffs, but an agreement between the defendants and the lessee by which he undertook that they would render themselves liable upon the lease, but afterward failed to do so. Instead of sustaining, it defeats the final conclusion of the referee. For it presents nothing from which a liability can be deduced, but on the contrary shows that nothing of that kind really existed. After the

very great labor and attention bestowed by the learned referee upon the case, it would be a source of pleasure to be able to sustain his conclusion as to the defendants' liability. But that cannot be done, because the facts, stated by him, do not warrant the result. And besides that, there is great reason for believing that the facts mentioned are not sustained by the evidence.

If the action can be maintained at all, it must be upon the theory that when the lessee was removed he abandoned the possession of the premises with the understanding that they should afterward be occupied and possessed by the defendants; that they should protect him against his liability for the rent by paying it themselves, and that they accepted and occupied the premises by his successor, as their agent, upon those terms. Upon those facts being established and found, no reason now appears why the defendants should not be held liable. But as the case stands, even if the proof will warrant the conclusion that they existed, they have not been found by the referee. For that reason the judgment must be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and WESTBROOK, J., concurred.

*Judgment reversed and a new trial ordered.*