### WILLIAMS v. MICHIGAN CENTRAL RAILROAD CO.

1. LANDLORD AND TENANT — RE-ENTRY — RIGHTS AND LIABILITIES OF SUBTENANTS.

   A provision in a lease that, on re-entry for nonpayment of rent, the subleases shall belong to the lessor, does not create such a relation between the landlord and a subtenant as to entitle the latter to hold the premises during the term, or make him liable to the landlord as tenant.

2. SAME—SURRENDER BY TENANT.

   Where a landlord accepts from his tenant a surrender of the premises, and an assignment of the tenant's interest in subleases, but there is no reservation from the surrender, and no confirmation of the subleases, such assignment does not entitle the landlord to hold the subtenants.

3. SAME—TERMINATION OF TENANCY—NOTICE TO QUIT.

   The relation of a subtenant to the original lessor cannot be affected by an agreement made between the lessor and the lessee after the termination of the latter's rights by notice to quit, though before a relinquishment of possession.

Error to Wayne; Hosmer, J. Submitted February 3, 1903. (Docket No. 62.) Decided June 23, 1903.

*Assumpsit* by John R. Williams and others against the Michigan Central Railroad Company for rent. From a judgment for plaintiffs on verdict directed by the court, defendant brings error. Reversed.

*Henry Russel* and *Wells, Angell, Boynton & McMillan* (*Ashley Pond*, of counsel), for appellant.

*William J. Gray* and *Robert T. Gray*, for appellees.

HOOKER, C. J. Plaintiffs, being owners of a business block in Detroit comprising 10 or 12 stores upon the first floor, and a corresponding area devoted to offices on other floors, leased said block, on April 30, 1894, to Friend

Palmer, for a period of 40 years, at an annual rental of $16,000. On April 1, 1897, Friend Palmer leased one of the stores to the Michigan Central Railroad Company, the defendant, for the period of one year from May 1st, at an annual rental of $3,000, with an option to the defendant for the renewal of the lease for the further period of one year, and on April 1, 1898, it wrote Mr. Palmer a letter electing to renew the lease for a year. On December 27, 1898, Friend Palmer was indebted to the plaintiffs on his lease in the sum of $9,500, and upon that day they filed a complaint with the circuit court commissioner to recover the possession of the block. A summons was served upon Palmer on December 28th. On December 31st the case was adjourned, and on January 3, 1899, a judgment of restitution was rendered by the commissioner.

The defendant vacated the store in the month of December, 1898, and on January 11, 1899, it wrote to plaintiffs' solicitors as follows, viz. :

"*Gentlemen:* Referring to the room in the Merrill Block, so called, in this city, which this company lately occupied for a ticket office under contract with Friend Palmer: I am informed that Friend Palmer's right of possession to said office was terminated by the judgment which your clients, the said John R. Williams *et al.,* recovered against him on the 3d inst., before William A. Hurst, circuit court commissioner. That being the case, and as the rights of this company in said room as subtenant of said Palmer were necessarily terminated by such judgment, this is to advise you that this company has already vacated said premises, and that no proceedings on behalf of your clients to recover possession of said premises will be necessary so far as this company is concerned."

On the same day it wrote to Thomas W. Palmer, who claimed the rent due from it to Friend Palmer, as follows, viz. :

"Hon. THOMAS W. PALMER,
                    "Detroit.
"*Dear Sir:* Referring to the bill presented by you to this company for $250 rent of office in the Merrill Block, this city, for January, 1899, as per terms of lease from

Friend Palmer to this company, dated April 1, 1897, I am informed that Friend Palmer's right of possession to said office, and all other right, title, and interest of said Friend Palmer therein, ceased on the 3d inst.; the same having been terminated and ended by a judgment of William A. Hurst, one of the circuit court commissioners for the county of Wayne, of that date, in favor of John R. Williams *et al.*, and against the said Friend Palmer, and that such judgment also terminated all rights which this company, as subtenant of said Friend Palmer, had at that time in said office. That being the case, I am advised that all obligation on the part of this company to pay rent for said office after January 3, 1899, has ceased."

It sent a letter of like import to Friend Palmer on the same day.

The keys of the store were tendered to plaintiffs' attorneys on January 12, 1899, by defendant. The plaintiffs were entitled to have a writ of restitution issued against Friend Palmer on January 9, 1899. Whether the writ was issued or not is uncertain. At all events it was not served; Friend Palmer agreeing to surrender possession, as shown by the following letter, viz. :

"FRIEND PALMER and Hon. THOMAS W. PALMER,
                                        "City.

"*Gentlemen:* My clients being now entitled to a writ of restitution for the Merrill Block, so called, leased to Friend Palmer under date of April 30, 1894, it is arranged, in order to avoid actual execution of a writ of restitution, that possession shall be voluntarily surrendered to them, and accordingly you have given us an order for the collection of the rents from January 1st out. It is understood that this is without prejudice to either of us as to the rents prior to that date, and without prejudice to any claim that we may have against you or either of you in the premises.        Yours truly,
                        "WILLIAM J. GRAY."

On January 13, 1899, Friend Palmer executed the following assignment, viz. :

"I hereby assign and transfer to John R. Williams, G. Mott Williams, and Josepha W. Douglas all my right, title, and interest in and to a certain lease made by me to

the Michigan Central Railroad Company for store room, northeast corner of Jefferson and Woodward avenues, Detroit, Michigan, and in and to all moneys now due or hereafter to become due.   Lease attached hereto.
[Signed] "FRIEND PALMER."

No consideration was paid, nor was any credit given to Friend Palmer on the plaintiffs' claim, for this assignment.

Plaintiffs' counsel declined to receive the keys when tendered by the defendant; but later, and on February 1, 1899, they consented to receive them, without prejudice to the rights of either party, and with the understanding that counsel, as the agents of the owners, should take charge of and rent the property, if possible, and whatever should be received during the period of defendant's lease should be credited to it upon its rent, if it should be afterwards held that any rent was collectible under that lease. On March 15th, plaintiffs were offered $60 a month for the eastern portion of the store, and $100 for the remainder. They began making repairs about March 15th, but did not get the store ready for occupancy until May 1st.

This action was brought against the defendant to recover rent due upon the lease from Palmer. The declaration counted specially upon the assigned lease, and the common counts, including a count for use and occupation, were added. Counsel requested the court to direct a verdict for defendant, and, in the event of a refusal of such request, that the plaintiffs should not recover for rent later than January 12, 1899. These requests were refused, and a verdict was directed for the plaintiffs for the full amount claimed, less $160, allowed for rent which would have been earned after March 30th; the counsel for plaintiffs conceding that two weeks after March 15th would have been a reasonable time for the completion of the repairs, and refusing to give credit from March 15th.

By the terms of the original lease, it was agreed that, upon re-entry, the subleases should belong to the lessors. There is also testimony that, before restitution, Mr. Palmer promised to surrender possession without process,

and possession was yielded and taken two days after the writ of restitution could have been issued. This promise was made by a Mr. Scott, said to be an agent of Mr. Palmer at the building; but the character of his agency was not shown, nor does it appear that the conversation occurred before the time limited by the notice to quit had expired. If there is any inference to be drawn from the testimony, it is that the talk occurred after that time; for the witness stated that it was known that plaintiffs intended to commence proceedings to obtain possession.

There is no dispute as to the character of the defendant's holding. It was clearly that of a subtenant, and there was no privity between it and the plaintiffs, unless such privity is to be predicated (1) on the provisions of the lease to Friend Palmer; (2) on the assignment, and the previous arrangement with Scott. Ordinarily a subtenant is not liable to the original lessor, there being no privity. 7 Enc. Laws Eng. 253; *Brewer* v. *Hill*, Anstr. 413; *Pleasant* v. *Benson*, 14 East, 237; *Holford* v. *Hatch*, 1 Doug. (Eng.) 183; *Earl of Derby* v. *Taylor*, 1 East, 502; 1 Platt, Leases, p. 103; 1 Wood, Land. & T. §§ 81, 89–92, 94, 322; 1 Taylor, Land. & T. §§ 109, 111; 18 Am. & Eng. Enc. Law (2d Ed.), p. 682, and cases cited; *Fulton* v. *Stuart*, 2 Ohio, 215 (15 Am. Dec. 542); *Davis* v. *Morris*, 36 N. Y. 569; *Austin* v. *Thomson*, 45 N. H. 113; *McFarlan* v. *Watson*, 3 N. Y. 286; *Robinson* v. *Lehman*, 72 Ala. 401; *Jackson* v. *Davis*, 5 Cow. 123 (15 Am. Dec. 451); *Marshall* v. *Lippman*, 16 Hun, 110; *Carver* v. *Palmer*, 33 Mich. 342; *Doty* v. *Gillett*, 43 Mich. 203 (5 N. W. 89); *Fisher* v. *Pforzheimer*, 93 Mich. 650 (53 N. W. 828); *Shannon* v. *Grindstaff*, 11 Wash. 536 (40 Pac. 123). Neither the agreement in the lease that the landlord should be entitled to the leases outstanding in case he should take possession by reason of nonpayment of rent by Palmer, nor the promise to Scott not to disturb the subtenants, created such a relation between plaintiffs and defendant as to entitle the latter to hold the premises during its term, or to make it liable to the plain-

tiffs as their tenant.   That such a relation might have
been created by the mutual assent of these parties is not
denied, but there is nothing to show it.   2 Taylor, Land.
& T. § 517; Clark, Cont. § 75.

Counsel for the plaintiffs endeavor to support their claim
by the contention that defendant's estate was not termi-
nated, and that the plaintiffs are the assignees of Palmer's
right to rent; and authorities are cited holding that a sub-
tenant cannot be cut off by the surrender of his immediate
lessor.   The case of *Beal* v. *Car-Spring Co.*, 125 Mass.
159 (28 Am. Rep. 216), is cited as in point.   In that case
the landlord accepted a surrender subject to the rights of
the subtenants in their subleases, of which he took an
assignment, and which he confirmed and promised to
respect.   It was held that the privity of contract was
transferred, and that the assignee might sue for the rent
accrued, although the subtenant had ceased to occupy
the premises.   If we were to admit the correctness of this
holding, it cannot apply here; for there was no reserva-
tion from the alleged surrender, nor was there any confir-
mation of the subtenant's lease.   The original lease did
not obligate the lessors to recognize the validity of sub-
leases after forfeiture, although it provided that they
should inure to the lessors' benefit.   Scott was not shown
to have had authority to bind Palmer in the arrangement
with plaintiffs, whatever it may have been.   Neither is it
shown that Palmer had any interest in the premises at
that time, but there is an inference to the contrary.   The
case of *Smith* v. *Building & Loan Ass'n*, 115 Mich. 347
(73 N. W. 395, 39 L. R. A. 410, 69 Am. St. Rep. 575),
holds that, after the expiration of the time limited by the
notice for the payment of rent, the lessee is a trespasser.
If, as seems probable, this alleged agreement with Scott
was made after that time expired, Palmer had no lease-
hold to surrender, but only a bare possession, and that
wrongful.   In any event, he did not surrender any estate,
but waited until the forfeiture was judicially declared, and

judgment of restitution made, when, to avoid eviction by writ of restitution, he gave up the possession.

We are of the opinion that a verdict should have been directed in favor of the defendant.

The judgment is reversed, and a new trial directed.

The other Justices concurred.