LAND, J.
This suit was dismissed on an exception of no cause of action, and the plaintiff has appealed.
The plaintiff sued the defendant for $2,-•010.65, with legal interest from March 1, 1911, and 10 per cent, on said principal and interest as attorney fees. It appears from the allegations of the petition and documents thereto annexed that on April 9, 1910, Joseph Franek leased to M. E. Turner, represented by H. C. Brewster, the premises Nos. 800, 802, 804, Bourbon street, in the city of New Orleans, for five years commencing on April 9, 1910, and ending on April 8, 1915, for the rental of $40 per month, payable on the 1st day of each and every month, beginning May 1, 1910. The contract contained the following stipulation:
“Should the lessee at any time fail to pay the rent punctually at maturity, as herein stipulated, the rent for the whole unexpired term of this lease shall at once become due and collectible, and in case of suit, the -lessee shall pay an additional sum of ten per cent, on the amount so due and exigible, as counsel fees.”
The act of lease contains no provisions whatever as to subletting the premises.
It further appears that on February 18, 1911, M. E. Turner leased the premises, known as Nos. 800-802 Bourbon street, to W. S. Flynt, for the term of 14 months and S days, commencing on February 1, 1911, and ending on April 8, 1915 (sic), for $40 per month, payable on the first day of each and every month, except the last note, which is made payable fixed (sic), evidenced by rent notes. The contract of sublease contains the usual clauses and stipulations; among others, that if the lessee should fail at any time to pay the rent punctually at maturity, the rent for the whole unexpired term shall at once become due and exigible. This act of lease contains no reference whatever to the lease from. Joseph Franek to M. E. Turner.
The petition alleges that M. E. Turner had paid no rent whatever to the plaintiff, and that William S. Flynt had paid no rent whatever to plaintiff or to H. G. ¡Brewster or to M. E. Turner.
The defendant, after pleading the general issue, averred that the premises were sublet to him by M. E. Turner, and that he had no contract with the plaintiff, and was in no way liable to him. i
The case was taken up for trial, and after plaintiff had offered in evidence the lease from plaintiff to Turner, and the lease from Turner to Flynt, the defendant filed an ex- *330 eeption of no cause of action, which, after hearing, was sustained and the suit dismissed.
Our learned Brother below, in his reasons for judgment said:
“Our law provides specially that only the property of the sublessee found in the premises is liable to the original landlord. There is no law providing for a personal action by the original landlord to recover the rent due by the defaulting sublessee. His only action is in rem against the property of the sublessee, and is limited to the sum due the lessee by the sub-lessee.”
The Civil Code reads:
“The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
“The interdiction may be for the whole, or for a part, and this clause is always construed strictly.” See article 2725.
In this case the lease was not ceded or assigned, but a part of the premises was subleased to the defendant.
[1,2] Plaintiff’s contention is that he has a direct right of action in personam against the defendant to recover the amount due by him, as subtenant, to the lessee. As this contention is based on the construction of article 1753 of the Code Napoleon by the French courts and commentators, it is necessary to determine whether the same article in whole or in part has been Incorporated in the Civil Code of Louisiana.
Article 1753 of the Code Napoleon reads as follows, to wit:
“Art. 1753. Le sous-loeataire n’est tenu envers le propriétaire que jusqu’a concurrence du prix de sa sous-locatioa dont il peut §tre débiteur au moment de la saisie, et sans qu’il puisse opposer des paiements faits par anticipation.
“Les paiements faits par le sous-loeataire, soit en vertu d’une stipulation portée en son bail, soit eh consequence de l’usage des lieux, ne sont pas reputes faits par anticipation.”'
This article is not found in the Civil Code of Louisiana, but the compilers of that Code, after providing that the lessor shall have for the payment of his rent and other obligations of the lease a right of pledge on the movable effects of the lessee, which are found on the property leased (article 2705), further provided as follows:
“2706. This right of pledge includes not only the effects of the principal lessee or tenant, but those of the undertenant, so far as the latter is indebted to the principal lessee at the time when the proprietor chooses to exercise his rights.
“A payment made in anticipation, by the undertenant, does not release him from the owner’s claim.
“2707. This right of pledge affects, not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store by their own consent, express or implied.”
The lessor’s right of pledge is exercised by means of a writ of provisional seizure issued in a suit by the lessor against the lessee for rent due or to become due. Code of Practice, article 287. Under such a writ the movables of the lessee, or the undertenant, or third persons, may be seized, when found on the leased premises. The right to seize the movables of the undertenant is, however, conditioned on his owing rent to the lessee, and is limited to the amount of such indebtedness, at the time the proprietor chooses to exercise his right of pledge. In Tulane Improvement Co. v. W. B. Green Photo Supply Co., 124 La. 619, 50 South. 601, this court construed article 2706 to mean that the lessor’s right of pledge is restricted to the amount owing by the sublessee at the moment of the seizure made at the Instance of the proprietor. It follows that under said article the remedy of the lessor is by a proceeding in rem against the effects of the subtenant, and that indebtedness of the latter to the principal lessee, at the moment of the seizure, is the measure of the lessor’s pledge on the effects of the subtenant, in the same manner as the indebtedness of the lessee to the lessor is the measure of the pledge of the lessor on the effects of third persons found on the leased premises. The statutory pledge *332 on the effects of third persons creates no personal obligation on their part in favor of the proprietor, and there is no good reason for assuming that the lawmaker intended that the statutory pledge on the effects of the subtenants should create such an obligation. In a recent case, this court decided that there is no contractual tie between a lessor and a subtenant, in the absence of an express assumpsit on the part of the latter. Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 South. 33, 124 Am. St. Rep. 456.
' The Code Napoleon contains no article correspondent with article 2706 of the Civil Code, and in fact does not invest the landlord with a similar right of pledge. As above stated, article 1753 of the Code Napoleon was not incorporated in our Civil Code. The first paragraph of that article may be translated as follows:
“A subtenant is only liable to the owner to the extent of the rent of the sublease which he may owe at the time of the seizure, but he cannot set up payments made in anticipation.”
Whether under C. N. 1753, the lessor had a personal and direct action against the sub-lessee was a very much controverted point in French jurisprudence, but seems to have been finally decided in the affirmative by the Court of Cassation. See Fuzier-Herman, vol. 4, pp. 369, 370.
The framers of the Civil Code of 1825 omitted the first paragraph of C. N. 1753, and substituted article 2706 [2676], conferring sharply a right of pledge on the effects of the subtenant to the extent of his indebtedness to the principal lessee at the moment of the seizure. This omission and substitution clearly manifests the intention of the compilers of the Civil Code not to confer on the lessor a right of personal and direct action against the subtenant.
We have been referred to no case in our jurisprudence where the lessor has proceeded by personal and direct action against the subtenant. The uniform practice has been to proceed against the lessee and to provisionally seize the effects on the leased premises.
Judgment affirmed.