VEVE ET AL., PLAINTIFFS AND APPELLANTS, *v.* FAJARDO SUGAR GROWERS' ASSOCIATION, DEFENDANT AND APPELLEE.

## APPEAL from the District Court of San Juan in an Action for Rescission of Lease Contract.

No. 2145.—Decided June 25, 1921.

LEASE—INSOLVENCY—CORPORATION.—The mere insolvency of a foreign corporation, accompanied by a forced sale of its assets in a jurisdiction different from that of its domicile and followed by a cessation of its business in that jurisdiction, does not *ipso facto* have the effect of extinguishing a contract of lease under which the corporation is a lessee and has continuously paid the rent.

ID.—ASSIGNMENT OF LEASE—SUBLEASE.—In an assignment of a lease the lessee conveys all of his rights without adding or subtracting anything and without altering, as to its substance, the relationship existing between him and the lessor, while in a sublease all kinds of alterations are possible; provided, naturally, that they do not operate to the prejudice of the lessor who took no part in the contract. Thus, for example, a sublease may refer to only a part of the property leased and may be for a different duration, or for a greater or less rent, etc., and an exact idea of one and the other act may be formed. That is the essential difference between the transactions. In an assignment the lessee conveys absolutely his right; his personality disappears, and a juridical relationship exists only between two persons, the lessor and the assignee, who becomes the lessee. In a sublease no personality disappears, but there are two leases and two juridical relationships which are different although closely connected with each other.

ID.—ID.—PRIVITY OF CONTRACT—LIABILITY.—An assignment by a lessee does not affect his subsequent liability by virtue of the express stipulations contained in the lease contract, and although the assignment may be by operation of law and the property may be taken from the lessee without his consent, such lessee, however, continues to be liable under his express stipulations. The reason for the continued liability of the lessee is that although by the assignment the privity of estate between the lessor and the lessee terminates, there still exists between them the privity of contract created by the lease which is not impaired by the assignment, and the lessee continues to be liable under his own contract by reason of the privity of contract.

ID.—ID.—EXTENSION OF LEASE.—The assignee of a lease substitutes the lessee in all the interests of the lessee and in the advantages of all of the stipulations and agreements of the lessor which are annexed to and run with the estate, including that of the lessor to allow an extension.

ID.—ID.—LIABILITY.—The liability to which the assignee is subject is for the infringments of the stipulations of the contract committed after the assignment and not for those committed by the lessee prior thereto.

ID.—ID.—ID.—DAMAGES.—The weight of authority is undoubtedly in favor of the rule that no action lies for non-compliance with the agreement to return the property in good condition until after the expiration of the lease.

The facts are stated in the opinion.

Mr. J. Tous Soto for the appellants.

Mr. L. Muñoz Morales for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellants brought suit to establish the termination, resolution, extinguishment or rescission of a lease executed in favor of the Esperanza Central Sugar Company, a foreign corporation, the nullity and invalidity of certain subsequent transfers; and as the result of such proposed pronouncements for recovery of possession of the leased premises and for damages.

The court below, after a trial, dismissed the action, and error is assigned as follows:

"1. The court below erred in not considering that the action brought in this suit is mainly an action to the effect that the court find that the contract of lease is terminated or extinguished, or that it expired, or was rescinded, and that in consequence of said finding the action is one of ejectment.

"2. The court below erred in not finding that the contract of lease is terminated or extinguished and that in consequence thereof the action of ejectment lies.

"3. The court below erred in not finding that the contract of lease has expired and has not been renewed in any form, and therefore that the action of revendication lies.

"4. The court below committed a manifest error in weighing the evidence in relation to the existence of forests on the leased property when the contract of lease was made and that they were subsequently destroyed by the original lessee and the defendant; and

in not finding that the contract of lease was rescinded, and in consequence thereof, sustaining the complaint.

"5. The court below committed a manifest error in not finding that the plaintiffs have suffered damages by the destruction of the forests, the said damages amounting to $7,000.

"6. The court below committed error because after finding that the products of the property while in the possession of the defendant had been proved, after June 30, 1917, it did not adjudge the said defendant to pay the same, which amounted to forty-five thousand, one hundred and thirty-one dollars and forty-six cents."

The first assignment is based upon isolated extracts from the statement filed by the trial judge, which, if fairly construed in connection with the text, are hardly open to the interpretation so suggested. But, be this as it may, the fundamental questions raised by the pleadings and the evidence were decided adversely to plaintiffs and, unless the conclusions so reached be unsound, any *obiter dictum* contained in the reasoning of the court below, if erroneous, may be regarded as harmless.

The fifth and sixth averments of the complaint, the truth of which is admitted by the answer, are as follows:

"Fifth: That the lessee corporation, The Esperanza Central Sugar Co., became insolvent about the year 1909, in which condition it finally remained without ever having been rehabilitated, all of its property and rights having been liquidated and sold at public auction by the United States Marshal for Porto Rico, the said contract of lease also having been sold by deed No. 35 executed before the notary public of San Juan, Andrés B. Crosas, on July 12, 1909, the said contract of lease of the property Aurora having been adjudicated to the corporation Colonial Sugar Co., constituted under the laws of the State of New York and represented by its president, Edwin Packer.

"Sixth: That the corporation The Esperanza Central Sugar Co., already in a state of insolvency, was adjudged out of business in this Island by the Treasurer of Porto Rico from November 12, 1910."

From the findings of the court below we quote the following:

"The facts are substantially as follows:

"That the plaintiffs are of age and residents of Porto Rico, the defendant being a corporation constituted under the law, doing business in Porto Rico and registered in the office of the Executive Secretary of Porto Rico.

"The plaintiffs are the owners of the property Aurora set out in the complaint; that the property is and was partly composed of forests; that the court is not justified under the evidence presented to determine the exact area or extension of such forest in 1906, nor at the present time, nor find that it was a forest of building timber; the said forest is now greatly diminished and nearly all cleared of trees and undergrowth.

"By deed of March 30, 1906, the plaintiffs leased to the corporation The Esperanza Central Sugar Co., then doing business in Porto Rico, the said property Aurora for a term of 11 years, from June 10, 1906; that it was agreed in the deed that the lessee reserved the right of renewing at will the contract of lease for five more years, the lessors also having agreed in the deed that the lessee was entitled to the use of the wood on the property. The rent stipulated was ($2,400) two thousand, four hundred dollars per annum during the first year and ($4,800) four thousand, eight hundred dollars per annum during the next ten years. Special stipulations were made as to the conditions and terms with regard to the cane ratoons, improvements, etc.

"It was not alleged nor proved that the rents for the lease had not been paid."

"The corporation The Esperanza Sugar Co. became insolvent in 1909 and so it has continued, its property and rights having been sold at public auction by the United States Marshal for Porto Rico, the aforesaid contract of lease having been conveyed together with said property; that it was conveyed to the corporation Colonial Sugar Co. and the sale made by deed of July 12, 1909, which was admitted in evidence (stenographic record, p. 63) and recorded in the registry of property.

"That the Treasurer of Porto Rico on November 12, 1910, declared The Esperanza Sugar Co. as not doing any business in Porto Rico.

"That on November 17, 1909, The Colonial Sugar Co., by a deed made before notary Thos. A. Gamon, assigned and conveyed to the trustees of The Fajardo Sugar Growers' Association the contract of lease of the property Aurora. This deed was recorded in the registry of property, which fact has been admitted (stenographic record).

"The powers of the said trustees are those set out in the eighth count of the complaint and considered as reproduced in this opinion.

"The plaintiffs alleged that the lessees of Aurora did not use the property with the care of a good father of a family, having destroyed forests and deteriorated the property. The court finds that it does not appear from the evidence what kind of forest was on Aurora, nor the number of big trees there, nor that the forest contained any building timber, or that it was prepared for building, or that the defendant has destroyed any forest or deteriorated the property. It does appear that the defendant has cut off or destroyed undergrowth or shrubs of little value and cultivated some part of the mountain. The plaintiff, pursuant to its averment, claims damages that were not proved. The court finds that the evidence as to these matters was conflicting and the evidence of the defendant more strong and reasonable:

"On February 5, 1917, the defendant herein notified the plaintiffs by notary, as owners of the Aurora property, that the defendant, as assignee of the Esperanza Central Company and, as such assignee, holding the leasehold originally in the Esperanza Central Company and paying the rents for the lease to the owners, was exercising the right of renewal and extension for five years stipulated in the lease and was serving notice to that effect by the said instrument on Concepción Veve. The record shows the admission that the notice was served on Josefina Veve (p. 64).

"The defendant is still in possession of the property as lessee.

"The plaintiff alleged that by virtue of the possession of the property by the defendant from June 30, 1917, on which date the plaintiffs aver that the contract of lease expired, they have suffered damages; that on such date they demanded from the defendant the delivery of the possession of the property. The products of the property were proved. The court will not enter into any detail on this matter as it is of the opinion that whatever the amount of the products might be, no reparation is involved if the defendant is legally in possession by reason of the extension of the lease.

"Such are, in reality, the facts as shown by the pleadings and evidence."

The argument under the second assignment seems to assume, without citation of authority to show, that the continued insolvency of the original lessee, the judicial sale of its assets, liquidation of its affairs and cessation of business in Porto Rico, is equivalent to a final dissolution of the corporation. Upon this premise and upon a distorted view of the doctrine announced by this court in the case of *Becerril* v. *Post,* 22 P. R. R. 681, is based the conclusion that the terms *sublease* and *assignment* are practically synonymous, that there is no legal tie between lessors and the defendant assignee and that the various transfers of the lease are null and void notwithstanding the continued payment of rent by such assignee.

As illustrating the theory of appellants in this regard, we quote from the original brief:

"If the assignment of a lease does not operate as a relief from liability of the original lessee in so far as the fulfilment of the obligations contracted for is concerned and the original lessee still remains liable to the lessor, that is, if there exists between the lessor and the original lessee the same legal relations after the assignment as prior thereto, it is clear that if the defendant has expressly admitted that the original lessee became insolvent subsequent to the execution of the contract, in which condition it remains without ever having been restored to the former conditions and the property and rights having been liquidated and adjudged out of business in the Island, a reasonable and inevitable conclusion is that the capacity of said original lessee had completely extinguished. And if the personality of the said defendant has been extinguished; if the lessee cannot be substituted in the contract of lease and avoid the compliance with the obligations therein contracted by means of an assignment; if under the principle set out an assignment of a lease can only be regarded valid when the original lessee continues liable and there subsists a juridical relation between him and the lessor, and if the said relation between the lessor and the original lessee in this case is broken by the extinction of the personality of the latter, and there is absolutely no contractual tie between the original lessor (the plaintiffs) and the assignee in the contract of lease (the defendant), it is clear that the said defendant is in the

possession of the leased premises without any title thereto, the contract of assignment having become terminated and extinguished by reason of the extinction of the personality of the assignor of the said contract, or the original lessee, and likewise terminated and extinguished whatever rights the assignee might be entitled to invoke with regard to the contract of assignment as against the assignor.''

In an additional memorandum of authorities filed after the hearing, the matter is more definitely summed up in this wise:

''This assignment, the only one that may be the subject of compromise, according to Scaevola, which leaves the liability of the assignee subsisting according to Manresa, notwithstanding which 'the liability of the lessee continues' and 'does not prejudice the latter' and 'leaves his rights secured' and 'preserves all the characteristics of the lease contract,' in the opinion of the court, is not an unqualified assignment, nor a subrogation of the lease by the sublessee, nor a renewal of the contract and does not create any juridical tie between a third person (the sublessee) and the owner; it is, in fact, for all effects as asserted by Scaevola, a subtenancy.''

By this process of reasoning in a circle, starting from the standpoint of Scaevola, whose conclusions were discarded by this court in *Becerril* v. *Post,* proceeding by easy stages, notwithstanding an obvious *non sequitur,* through the contrary view of Manresa, adopted by this court as in full consonance with the American doctrine, and eventually returning to the point of departure, appellant would obliterate all trace of distinction between a contract of sublease and an assignment and would, in effect, wipe out the precedent established by our decision in the case above mentioned.

The case upon which appellants seem to rely most strongly as supporting this view is *Audubon Hotel Co.* v. *Brauning,* 120 La. 1087, from which, after quoting at length from the opinion therein, counsel seek to draw the following conclusion:

''What is said of the sublessee is applicable to the assignee if

there is no privity of contract between the owner or original lessor and the assignee. This tie would only exist if the lessee had expressly assented to the assignment, thus exonerating the original lessee from liability and subrogating him by the sublessee and renewing the obligation.''

In the absence of any citation of authority for the hypothesis that the mere insolvency of a foreign corporation, coupled with a judicial sale of its assets in a jurisdiction other than that of its domicil, followed by a cessation of business in such other jurisdiction, *ipso facto* operates the extinguishment of a contract of lease entered into with such corporation as lessee notwithstanding the continued payment of rent, it would suffice to say that the soundness of the proposition so suggested is by· no means self-evident. As a starting point for investigation along this line, however, we may refer in passing to the following: Note to *Hastings Corporation* v. *Letton,* 3 British Ruling Cases, 617, 627; note to *People* v. *O'Brien,* 2 L. R. A. 255, 256; note to *Leonard* v. *Hartzler,* 50 L. R. A. (N. S.) 383; 14 Corpus Juris, p. 884, sec. 3063; p. 1118, sec. 3734; p. 1349, sec. 4056; 7 Corpus Juris, page 28, sec. 25; 12 R. C. L., p. 113, sec. 89.

A complete and accurate statement of what was decided by this court in *Becerril* v. *Post, supra,* is found in the syllabus, which is perfectly plain and reads as follows:

''A lease is a contract by which one of the parties agrees to give to·the other for a fixed time and price the use or profit of a thing or of his services.

''According to section 1453 of the Revised Civil Code and subdivision 5 of article 2 of the Mortgage Law, a contract of lease of real property for more than six years has the character of a real right in the leased property.

''The lessee may sublet the leased property without the consent of the lessor when there is no express prohibition in the contract.

''A lessee is empowered to assign his lease without first asking and obtaining the consent of the lessor when assignment is not expressly prohibited in the contract. In the absence of an express

prohibition or of a plainly immoral consequence, the principle holds that no obstacle should be placed in the way of the right of free contract.

"The assignment of a lease does not annul the lessee's obligation on his express covenant to pay the stipulated rent, even though the lessor has assented to such assignment and collected rent from the assignee, unless the lessor has accepted the surrender of the lease and released the original lessee."

An admirable condensation of the doctrine laid down by the Louisiana court in *Audubon Hotel Co.* v. *Brauning,* upon which so much stress is laid by appellants, is to be found in 16 R. C. L. at page 877, sec. 381, where the same is cited in support of the following proposition:

"As between the original lessor and the sublessee there is no privity of contract or estate, and therefore the sublessee does not acquire, as a general rule, by virtue of the sublease merely, any right to enforce the covenants or agreements of the lessor contained in the original lease."

And the Supreme Court of Louisiana in *Frank* v. *Flynt,* 132 La. Rep. 327, referring to the Audubon Hotel Case, says:

"In a recent case, this court decided that there is no contractual tie between a lessor and a subtenant, in the absence of an express assumpsit on the part of the latter."

Following the lead given us in Ruling Case Law, *supra,* and turning to a note to *Mitchell* v. *Young,* 117 A. S. R. 89, we find at page 99 the following:

"It has already been noted that the assignee of a tenant is in privity with the landlord, and is therefore bound by the covenants in the lease which run with the land, including a covenant to pay rent: See the note to Washington Natural Gas Co. v. Johnson, 10 Am. St. Rep. 560; Hogg v. Reynolds, 61 Neb. 758, 87 Am. St. Rep. 522, 86 N. W. 479; Campbell v. Gates (Tex. App.) 51 S. W. 268; but there is no privity between a subtenant and the original landlord, and the latter cannot sue the former on covenants in the original lease, nor hold him liable for the rent therein reserved: See the note to Washington Natural Gas Co. v. Johnson, 10 Am. St.

Rep. 564; Williams v. Michigan Cent. R. Co., 133 Mich. 448, 103 Am. St. Rep. 458, 95 N. W. 708; Coles v. Marquand, 2 Hill, 447; Harvey v. McGrew, 44 Tex. 412; Missouri etc. Ry. Co. v. Keahey (Tex. Civ. App.), 83 S. W. 1102. But while a subtenant cannot be sued on the covenants of the original lease, he may be ousted if they are violated: Geer v. Boston Little Circle Zinc Co. (Mo. App.) 103 S. W. 151.''

Manresa, in Vol. 10 of his commentaries, p. 484, contrasting the essential elements of subleases and assignments, says:

''There should be added to these distinctions the consideration that in the assignment of a lease the lessee makes a full conveyance of his right without any alteration, there being no essential change in the contents of the relation existing between him and the lessor, while in a subtenancy all alterations are possible, provided that they do not affect the lessor who has not intervened in the contract, for instance, a subtenancy may refer to a part of the thing leased, a different period of duration may be agreed upon, a higher or lower price, etc. and a full comprehension of one or other will be determined. This is the essential difference between the distinct acts we are considering. In the assignment the lessee conveys his absolute right, his personality disappears and only the persons remain in juridical relation, the lessor and the assignee who becomes the lessee. In a subtenancy the personality does not disappear, there being two distinct leases and two juridical relations although intimately connected one to the other.''

A few brief extracts from other sources will make clear at once the fallacy of appellants' argument and the essential difference between a sublease and an assignment of the leasehold, based upon this distinction wholly ignored by counsel for appellants between privity of contract and privity of estate:

''A sublease may be generally defined as a transaction whereby a tenant grants an interest in the demised premises less than his own, retaining to himself a reversion; and a subtenant is a person who rents all or a portion of leased premises from the lessee for a term less than the original one, leaving a reversionary interest

in the first lessee. A subletting creates a new estate, dependent upon or carved out of but distinct from the original leasehold. An assignment is distinct from a subletting and therefore is not a breach of a covenant against subletting.'' 16 R. C. L. p. 869, sec. 373.

''There is neither privity of contract nor of estate between a sublessee and the original lessor, and the former incurs no liability directly to the latter, by reason merely of the subletting, for the payment of rent reserved in the original lease, nor for the performance of the other covenants on the part of the lessee. And as the conventional relation of landlord and tenant, created by agreement, express or implied, must exist, between the parties in order to maintain an action for use and occupation, this action will not lie at the instance of the original lessor against a subtenant. In some of the states this rule of the common law, as to the nonliability of a sublessee to the original lessor for rent, has been changed by a statute which places to some extent a subtenant on the same footing with an assignee.'' *Idem,* p. 879, sec. 384.

''An assignment by a lessee is a transaction by which he transfers his entire interest in the demised premises or a part thereof for the unexpired term of the original lease.'' *Idem,* p. 824, sec. 319.

''As a general rule, the power of assignment is incident to the estate of a lessee, unless it is restrained by the terms of the lease. Though a lease is necessarily a contract, yet it is a contract which creates an estate, and by the common law an estate is assignable, although a contract is not so, and the power to assign exists without the word 'assigns' in the lease.'' *Idem,* p. 828, sec. 323.

''A general restriction on the right to assign is held to include only a voluntary assignment, and not an involuntary assignment. If, however, the lessor desires to avoid an involuntary transfer, he may provide expressly in the lease that such a transfer shall work a forfeiture and the courts will give effect to such a provision.'' *Idem,* p. 834, sec. 333.

''It is the generally recognized rule both in England and in this country that the transfer of a lease resulting from involuntary bankruptcy or insolvency proceedings is not within a general restriction against assigning,'' *Idem,* p. 836, sec. 335.

''An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this

is true though the assignment is with the consent of the lessor; and although the assignment by act of law, and the estate be taken from the lessee against his consent, he nevertheless continues liable upon his express covenants. The reason for the continued liability of the lessee is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment, although made with the assent of the lessor, and the lessee still continues liable on his covenant by virtue of the privity of contract." *Idem,* p. 843, sec. 343.

"The lessee is liable to the lessor on an express covenant to pay rent, even though he has assigned the leasehold with the express consent of the lessor, so long as there is not a specific release of liability, and this is true though the lease provides that it shall not be assigned without the consent of the lessor and his consent to the assignment was given. Nor is the lessee's continued liability for unpaid rent affected by the fact that the lessor has received payments of rent from the assignee. The reason for this is that the covenant to pay rent inheres in the estate as a covenant real, and binds the assignee of the term, by reason of his privity of estate, to pay the rent accruing during his ownership and possession of the estate; so that, after an assignment of the lease, the lessor has a double and several security for the payment of his rent, either or both of which he may pursue until satisfaction is obtained. Therefore the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment." *Idem,* p. 846, sec. 346.

"The institution of an action by the lessor against the assignee does not itself affect the lessee's liability to the lessor. Payment of rent by the assignee is, however, payment *pro tanto* by the lessee as regards the latter's continued liability to the lessor." *Idem,* p. 847, sec. 347.

"The assignee of a leasehold estate succeeds to all the interest of the lessee and to the benefit of all the covenants and agreements of the lessor which are annexed to and run with the estate, including the benefit of the lessor's covenant or agreement to renew, and, as a general rule, the benefit of an option to purchase also passes to the assignee of the term. On the other hand the assignee cannot

sue for breaches of covenants which occurred before the assignment to him, nor can he sue for breaches of covenants the benefits of which do not run with the leasehold.'' *Idem,* p. 848, sec. 348.

''An assignee of the leasehold is in privity of estate with the lessor and is liable to him personally for the breach of the lessee's covenants which are annexed to and run with the leasehold and which are broken while he holds the leasehold estate, and though the assignment is by operation of law the assignee takes subject to the general liabilities of a voluntary assignee.'' *Idem,* p. 849, sec. 349.

''The purchaser of a leasehold at a judicial sale is liable to the lessor to the same extent as any other assignee as soon as he secures the title, whether he actually takes possession or not; and a purchaser under a foreclosure of a mortgage or trust deed likewise becomes liable for rent as an assignee of the lease. Since an assignee is not liable for rent accruing before he comes into privity of estate with the lessor the purchaser of a leasehold at a judicial sale is not liable for rent accruing after the sale, but before he acquires the right of possession, and his liability may be terminated by making an assignment of the lease but not by mere abandonment or possession.'' *Idem,* p. 861, sec. 363.

''A privy in estate is a successor to the same estate, not to a different estate in the same property.'' *Pool* v. *Morris,* 74 Am. Dec. 68, cited with approval in *Land* v. *Metzger,* 69 N. E. 493.

''Taylor on Landlord & Tenant, Sec. 436, says the mere assignment of the lease does not transmit to the assignee any succession in respect to the contract, and therefore does not create privity of contract. But, since he takes the estate of his assignor, the lessee, by an assignment, he becomes liable because of privity of estate, or succession to the estate vested in the lessee by the lease.'' *Comley* v. *Ford,* 64 S. E. 448.

''Privity implies succession. He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it.'' *Boughton* v. *Harder,* 46 App. Div. 352.

''The purchaser of the leasehold at a judicial sale is, as soon as he secures title, in privity of estate with the lessor, and therefore liable to him for the payment of rent. Baltimore v. Peat, 93 Md. 696, 50 Atl. 152, 698; Astor v. L'Amoreux, 4 Sandf. 524; Harbaugh v. Zentmyer, 2 Rawle, 159; Thomas v. Connell, 5 Pa. 13.'' 52 L. R. A. (N. S.) 988.

The argument under the third assignment is practically a repetition of that under the second and proceeds along the lines indicated by the following extract:

"The fifth clause of the deed of lease involves the right of renewal which was granted to The Esperanza Central Sugar Co. By virtue of such agreement the said original lessee could, upon the expiration of the contract, have exercised the right of renewal and demanded of the plaintiffs the execution of the corresponding deed of renewal, but as the personality of the Esperanza Central Sugar Co. had already extinguished at the expiration of the contract, obviously it could not exercise such right of renewal nor make the adequate demand.

"Could The Fajardo Sugar Growers Association have exercised such a right?

"Clearly not, as the existence of a judicial or contractual relation between the assignee (the defendant) and the plaintiffs was indispensable and such tie or relation as we have seen does not exist and it has been proved that it never existed."

The answer to this proposition, in so far as not already disposed of, may be found in the following elementary texts:

"It is the well recognized general rule that the benefit of the lessor's covenant to renew runs with the leasehold estate and is enforceable by an assignee; and, as a corrollary of this rule after a lessee has assigned the term he loses his right to enforce the renewal, as such right has passed to his assignee." 16 R. C. L., p. 897, sec. 402.

"An assignment operated to transfer to the assignee all the right title or interest of the assignor in the thing assigned." 5 C. J. 946 and note 47.

"A covenant by the lessor for renewal is one which runs with the land, and the assignee of the leasehold is entitled to the benefit thereof.". Tiffany, Landlord and Tenant, vol. 2, p. 1548, sec. 230.

"A covenant to renew a lease runs with the land." Note to *Gidden* v. *Second Avenue Investment Co.*, L. R. A. 1915 C, 219.

The fourth assignment of error involves not only an is-

sue of fact but several interesting legal questions which might have been more fully developed by the parties with possible advantage to one side or the other. In the absence of such elaboration in the briefs, however, we need not undertake at this time to pass upon every point so suggested. Whatever the final conclusion to be reached in regard to these matters may be, it seems to be reasonably clear that the defendant herein is not liable for waste committed by its predecessor in interest, the original lessee.

"The liability to which the assignee becomes subject is a liability for breaches of covenants which may occur after the assignment, and not those which may have occurred by the lessee's fault prior thereto." Tiffany, Landlord and Tenant, Vol. 1, p. 971, sec. 168 c.

"The assignee is not liable for breaches occurring prior to the assignment." 24 Cyc., p. 982.

"The assignee is not liable on the covenants or agreements of the lessee which were broken before he acquired the leasehold; though the burden of a covenant or agreement runs with the leasehold until the breach, it then ceases to run, because it is thereby turned into a cause of action. Thus in the case of an oil lease the assignee is not liable for a breach of the lessee's covenant to drill a well by a specified time if he did not take the assignment until after the time specified, and consequently after the covenant was broken." 16 R. C. L., p. 849, sec. 349.

"Where a tenant fells trees under circumstances which constitute waste, an action lies immediately by the reversioner to recover damages to the freehold." Note to *Anderson* v. *Cowan,* 106 A. S. R. 310.

Possibly defendant herein might be liable upon an implied covenant to deliver the premises in good condition at the end of the term, an obligation which would seem to run with the land; but that was not the theory of appellants in the court below and this view of the matter has not been suggested on appeal. As bearing upon the point, however, we may quote the following:

"The weight of authority undoubtedly is in favor of the doc-

trine that no action lies for a breach of a covenant to leave in good condition or the like until the expiration of the tenancy. The reason for this rule is apparent, for though the tenant, during the term, suffers the premises to become in a bad condition, he has during the term a locus poenitentiae to put the premises in the required condition, and it cannot be said, because of their condition at any time during the term, that they will not be left in a proper condition at the end of the term. On the other hand the rule is stated in Sheppard's Touchstone (p. 173) that 'if one covenant to leave a wood in the same plight he finds it, and he cut down trees, in this case the covenant is broken presently, for it is now become impossible to be performed by his own act;' and cases in this country have recognized this doctrine and have held that if the damage done by the lessee is something that cannot be repaired, the lessor need not delay until the expiration of the tenancy in order to sue for breach of a covenant to leave in good condition." 16 R. C. L., p. 790, sec. 284.

In the circumstances we are unable to say that the court below erred in weighing the evidence as to the cutting of timber, and in declining to decree a forfeiture or rescission of the lease and delivery of the leased premises by reason of such alleged breach, committed any reversible error.

It follows that the error, if any, in not finding that appellants have suffered damages to the amount of $7,000 by reason of the removal of timber is harmless, and that the sixth assignment, which is but a corollary of the propositions already disposed of, must share their fate.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.