# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* MARY V. PEAT.

*Landlord and Tenant—Liability of Assignee of Leasehold Interest to Original Lessee Who Paid Rent to Lessor—Effect of Sale Under Decree to Divest Assignee of Leasehold of Legal Estate—Privity of Estate—Limitations.*

Plaintiff was the original lessee for ninety-nine years of a lot of ground and covenanted to pay the rent reserved. This leasehold interest by mesne conveyances became vested in the defendant in December, 1895. In April, 1897, defendant's interest as such assignee was sold under a decree of a Court of equity by a trustee, the sale ratified and the purchaser went into possession, but owing to a mistake the leasehold interest was not conveyed to the purchaser by a deed from the trustee until after the institution of this action. The rent reserved in the lease was not paid for the years 1896 to 1900 inclusive by the holders of the leasehold, and the same was paid by the plaintiff who was liable therefor under the covenant. Plaintiff sued the defendant to recover the amount so paid. *Held,*

1st. That defendant's liability to pay the rent existed only while the owner of the leasehold and during the existence of privity of estate.

2nd. That defendant's title to the lot was divested by the equity sale in 1897 and the trustee's deed operated retrospectively to vest the legal title in the purchaser from the date of the sale.

3rd. That the deed from the trustee, although executed since the institution of the suit is admissible in evidence.

4th. That the defendant is not liable to the plaintiff for rent paid by the plaintiff after said sale, the privity of estate being thereby destroyed.

5th. That the plea of limitations is a bar to recovery of rent due by the defendant before the sale.

Appeal from the Baltimore City Court (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Charles W. Field*, for the appellant.

*Frederick C. Cook*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant was the original lessee of a lot of ground in Baltimore City under a ninety-nine years' lease containing the usual covenant on the part of the lessee to pay the rent as it matured. The term created by this lease came to be vested in the appellee by assignment. The appellant by reason of its liability under the covenant was compelled to pay certain instalments of rent which matured after the assignment and it brought the present action to recover from the assignee the amount so paid. The declaration was in *assumpsit* for money paid by the appellant for the use of the appellee.

The appellee pleaded *nil debet, non assumpsit*, and limitations and also filed four special pleas by way of defense on equitable grounds. The appellant joined issue on the first and second pleas and replied to the third plea that the action had accrued within three years. It demurred to the four special pleas. The Court overruled the demurrers and the appellant permitted final judgment to be entered against it in the case and took the present appeal.

The declaration alleged the demise of the lot to the appellant in 1868, for the term of ninety-nine years at an annual rent of $300, and that the lease contained a covenant on the part of the lessee to pay the rent as it matured. It also alleged the acquisition of the term by the appellee through mesne assignments on December 12th, 1895, subject to the implied covenant and liability on her part to pay the rent, but that she failed to pay so much of it as fell due in the years from 1896 to 1900 inclusive, amounting in all to $1,500. It further alleged that the appellant paid this rent to the lessor as it was bound to do under the covenants of the lease, and that the appellee though often requested to do so did not repay the rent to the appellant.

The pleas demurred to averred that the appellee's estate in the lot was terminated on April 20th, 1897, by a sale of it and other property made under a decree of the Circuit Court of Baltimore City passed in a cause in which that Court had jurisdiction, by Wm. R. Barnes, trustee to Emora Brannan

and John C. Peat, and that the sale had been finally ratified in due course on May 27th, 1897; and that the purchasers thereupon entered into possession of the lot and had ever since retained and used it. The pleas further alleged that after the purchase-money had been fully paid a deed was made by the trustee to the purchasers of the property so sold, but by inadvertence and mistake the lot now in question was omitted from the deed. In two of the pleas it was further alleged that such omission was not discovered until after the institution of the present suit, when the omitted lot was conveyed by the trustee to the purchasers Brannan and Peat by a deed duly executed, acknowledged and recorded before the filing of the pleas.

Upon this state of facts the appellant contended that as the first deed from the trustee to the purchasers did not include the lot in question the legal estate therein remained in the appellee and maintained the privity of estate between her and the lessor during the period when the rent which forms the basis of the present action accrued and that she would have been liable therefor to the lessor in an action upon the covenants of the lease. That the payment of the rent by the appellant had enured to her benefit and relief by the discharge of her liability for it and that she was under an obligation to repay it which could be enforced in this suit.

The appellee contended that limitations was a bar to the recovery of so much of the rent as matured and was paid by the appellant prior to the sale of the lot to Brannan and Peat in April, 1897, and that she would not have been liable to the lessor for the rent thereafter accruing because that sale divested the title to the term out of her and vested it in the purchasers and thus destroyed the privity of estate between her and the lessor, even though the deed from the trustee to the purchaser was not made until after the institution of the present suit.

We think that inasmuch as the appellant offered no evidence in support of its replication to the plea of the statute of limitations but suffered final judgment to be entered against it on the demurrer that its claim to be reimbursed for so much of

the rent as fell due and was paid by the appellant more than three years prior to the institution of the suit, must be held to be barred by limitations. This disposes of the rent, which matured prior to the sale of the lot by the trustee to Brannan and Peat on April 20th, 1897.

We will now consider the appellant's right to be reimbursed for the payment of so much of the rent as matured after the trustee's sale.

There is no doubt that the covenant to pay rent in a lease like the one now under consideration not only binds the lessee personally throughout the entire term, but also runs with the land and each successive assignee of the leasehold term becomes liable upon the covenant to the lessor for such rent as matures while the title to the leasehold remains in him, provided the action against him for the rent be instituted before he parts with the legal title to the term. It is equally clear that as the assignee's liability for the rent springs entirely from his relation to the land that liability extends only to such rent as matures while the title to the term remains vested in him. *Hintze* v. *Thomas*, 7 Md. 346; *Donelson* v. *Polk*, 64 Md. 504; *Consumers' Ice Co.* v. *Bixler*, 84 Md. 446.

The assignee of a term has in different cases been also held liable to indemnify the original lessee against breaches of covenants in the lease committed during the continuance of his own tenancy, and this Court has in so far recognized that liability as to refer to it for purposes of illustration in *Brinkley* v. *Hambleton*, 67 Md. 177, but the liability to so indemnify the original lessee if it exist is founded upon the primary liability of the assignee to the lessor to perform the covenants during his own tenancy.

The vital question, therefore, in the case before us is at what time under the facts presented by the record must the legal title to the leasehold estate in the lot on which the $300 rent was reserved be regarded as having been divested out of the appellee.

The mere assignment of the equitable title of the assignee to the leasehold whether accomplished by his own act or

through the agency of a judicial proceeding if not consummated by the transfer of the legal estate will be insufficient to discharge him from liability under the covenants of the lease. *Peter* v. *Schley*, 3 H. & J. 211 ; *Lester* v. *Hardesty*, 29 Md. 50 ; *Saunders* v. *McDonald*, 63 Md. 508 ; *Nickel* v. *Brown*, 75 Md. 184. In the case at bar it is admitted that there was not only a divesting of the equitable title of the appellee to the leasehold by the trustee's sale to Brannan and Peat, but there was ultimately a conveyance of the legal estate from the trustee to the purchaser. The contention of the appellant is that notwithstanding the fact of the conveyance of the legal title out of the appellee by the trustee's deed that during the interval between the trustee's sale and his deed the legal title remained in her in such sense that it maintained the privity of estate between her and the lessor and made her liable for the rent maturing during that time, but we cannot admit the soundness of this contention.

There would be great force in the appellant's position if the appellee had transferred to Brannan and Peat an equitable title to the lot in question by a contract of sale or bond of conveyance made by her and had then for a long time neglected to complete the transaction by a transfer of the legal estate, but the trustee's sale was a transaction between the Court and the purchaser the consummation of which depended upon no further action upon her part. Upon the final ratification of the sale the equitable and substantial title to the lot was divested out of her and into the purchasers and when the trustee's deed conveying the lot to the purchaser was duly executed, acknowledged and recorded the same transmutation of the legal title occurred. The order of ratification and the trustees deed did not however operate to pass the equitable and legal title respectively *merely from their several dates*, but being made under a judicial sale, they, upon the principle of relation, operated retrospectively and divested the equitable and legal estates out of the appellee and vested them in the purchasers *from the date of the trustees sale*. *Wagner* v. *Cohen*, 6 Gill, 102; *Lannay* v. *Wilson*, 30 Md. 550; *Hunter* v. *Hatton*, 4 Gill, 126–7; *Dalrymple* v. *Taneyhill*, 4 Md. Chy. 175.

Nor do we think the fact that the deed from the trustee to Brannan and Peat was not executed until after the institution of the present suit renders it inadmissible in evidence to prove a destruction of the privity of estate between the appellee and the lessor as of the date of the trustee sale of the lot. There is some conflict of authority upon this proposition outside of our own State, but since the case of *Hunter* v. *Hatton, supra*, there is no room for doubt as to the view of this Court upon the question of the operation of the deed or its admissibility in evidence. In that case the plaintiff had purchased a parcel of land at a trustee's sale which was finally ratified, but no deed for the land had been made to him by the trustee. In that condition of his title when he held the equitable, but not the legal estate he brought an action of trespass *q. c. f.* for a forcible entry into the land. The defendant pleaded *liberum tenementum* and the plaintiff traversed the plea thus putting in issue the defendant's freehold title to the land. At the trial of the case the plaintiff to prove that the freehold title was in him and not in the defendant offered in evidence the record of the chancery proceedings under which the sale to him had been made accompanied by a deed from the trustee to him which had been executed after the institution of the trespass suit. The lower Court refused to admit the evidence and judgment was rendered for the defendant. This Court reversed the judgment upon the ground that the deed from the trustee to the plaintiff, although made after the institution of the suit passed the title not merely from the time of its execution but, being a conveyance under a judicial sale, upon the principles of relation it operated retrospectively and vested the freehold estate to the premises in the grantee from the date of the sale and therefore disproved and defeated the plea of *liberum tenementum* and that by operation of law the freehold was in the plaintiff at the time the trespass was committed.

It is true that the Courts especially in later cases have shown a just disposition to so limit the application of the doctrine under consideration as not to destroy intervening rights of innocent parties created *bona fide* and for valuable considera-

tion which have duly attached to the estate between the events which it is proposed to unite by relation, but it is obvious that the present case is not a proper one in which to apply the limitation for here there are no such intervening rights. The appellant did not pay the rent sued for at the request of the appellee, nor upon the faith of her supposed responsibility to him. No such request or reliance is alleged in the pleadings. On the contrary the declaration alleges that the appellant paid the rent, because it was bound by its own covenant to do so.

In our opinion the deed from Barnes, trustee, to Brannan and Peat, although made after the rent sued for fell due and even after the institution of this suit operated by relation to divest out of the appellee the legal title to the leasehold estate as of the date of the trustee's sale on April 10th, 1897, and thus terminated the privity of estate between her and the lessor as of that date and that she is not liable to either the appellant or the lessor for the rent which matured thereafter.

It followed from what we have said that the judgment appealed from was affirmed, by the order *per curiam* heretofore passed by us.

*Affirmed.*

(Decided *per curiam* June 14th, 1901. The foregoing opinion was filed October 18th, 1901.)

PAGE, J., dissented and delivered the following opinion.

I cannot concur in the opinion of the majority of the Court filed in this case. It seems to me that the principles clearly announced in *Nickel* v. *Brown*, 75 Md. 184, are decisive of the questions involved in this case. That case sustained and reaffirmed the doctrine that seems to be well settled in this State and elsewhere, that an assignee of the term, is liable on the real covenants of the lease, until the legal title has passed from him, and that such title cannot pass except by deed duly executed and recorded. In *Lester* v. *Hardesty*, 29 Md. 54, in which the suit was brought to recover the rent from the assignee of a mortgage of the term by the assignor, when the assignee had failed to record the assignment, it was held that upon the case made there could be no recovery,

because the deed of assignment, not having been properly recorded, the legal title was not in the assignee and that therefore the covenants in the lease running with the land could not bind him, but only the party holding the legal estate.   So in *Mayhew* v. *Hardesty*, 8 Md. 495, it was held that unless the term had been assigned in the manner provided by our registry laws (and in no other way), could "Mason be regarded as the legal assignee of Hardesty's entire interest."

The case of *Nickel & Brown* already referred to maintains this position with great clearness, and moreover has many facts like those of the case at bar.   Nickel by assignment, duly executed and recorded, became possessed of the leasehold in 1886, and paid the rents up to January, eighteen hundred and eighty-nine.   Having died, his executrix sold his leasehold interest, under an order of the Orphans' Court and deeds for the same were executed in September, 1899, and delivered to the purchaser before the first day of January, 1890, but were not recorded until June, 1890.   Suit was brought against the executrix in February, 1890, after the deeds were delivered, but before they were recorded ; the leading question was "whether the executrix was liable for the rents and taxes that were in arrear when the suit was brought. It was held, the action would lie, although she had sold her entire interest to a third party ; that when the periods arrived for the payment of the rent the party holding the legal title must pay them ; and that when his title was by assignment, such "assignment continued in full force and effect until he put some one in his place possessed of the leasehold legal title."   "There can be no *hiatus* in the tenancy ; there can be no abeyance of the legal title to the leasehold."   "The mode by which the legal title must be conveyed is distinctly provided in the 21st Article of the Code of Public General Laws."   The facts of that case as I have said, were very similar in many respects to those now before us.   The leasehold interest was sold by order of the Court, Mrs. Scott, the purchaser, paid the purchase money and received a deed on

or before the first day of January, 1890, which, however, was not recorded until July following ; the rents sued for, accrued on the first day of July, 1889, and the first day of January, 1890 ; and suit was brought in February, 1890. Certainly this was as strong a case as the one at bar. But the Court held that the suit was properly brought upon the ground that at the time the rent accrued, Nickel was the holder of the legal estate, though before the action was brought the estate had been sold, the deed therefor, had been executed and delivered. It was held that by reason of the failure to record the deed the legal title had not passed. The Court, further along in its opinion said : "The deed to Mrs. Scott was recorded in June, 1890 ; at *that* time, and not earlier, the liability of the former assignee, her grantor, ceased to exist."

The liability of the assignee of the term to the lessor, is founded upon the privity of estate, and not upon any privity of contract. During the continuance of that privity, such assignee is liable upon all covenants that run with the land. It cannot be avoided, as long as such privity exists, by any outstanding equities between himself and third parties. Being a result attributable to his position as the holder of the legal estate, it is immaterial whether he is possessed of the premises or not, and it is clear, as a corollary of the proposition, that, he can be held for breaches of the real covenants occuring during the continuance of the privity, in an action at law, which is instituted before and not after, he has divested himself of the estate. *Mayhew* v. *Hardesty*, 8 Md. 494 ; *Consumers' Ice Co.* v. *Bixler*, 84 Md. 446 ; *Reid* v. *Wiessner Brewing Co.*, 88 Md. 236 ; *Com. Bldg. Assn.* v. *Robinson*, 90 Md. 618.

If, therefore, this case, was one in which there was no question of an assignment by Mrs. Peat, and the city had paid the rent which accrued during the continuance of her tenancy, clearly she would be under an obligation to indemnify it for its outlay. This principle is established by the cases of *Burnett* v. *Lynch*, 5 B. & Cr. 589; *Moule* v. *Garrett*, L. R. 5 Exch. 132—L. R. 7 Exch. 101; referred to in *Brinkley* v. *Hambleton*.

*& Co.*, 67 Md. 177. That Mrs. Peat was the holder of the legal title at the time the rent accrued and when this action was instituted, I think, is clear, under the rulings in the case of *Nickel* v. *Brown* (*supra*), and it seems to me impossible to affirm the judgment in this case without overruling the doctrine laid down in that. The opinion of the Court is based upon the idea that the sale by the trustee, the "substantial title to the term," was divested out of Mrs. Peat, the appellee, and vested in the purchasers as of the day of sale ; and that thereby, the privity of estate between her and the lessor was destroyed. While it must be admitted, that the ratification of a trustee's sale retroacts, and the purchaser is regarded by relation as the owner from the period of the sale," as was said in *Wagner* v. *Cohen*, 6 Gill, 102, yet this statement of the law does not affirm, and I think the Court did not mean there to lay down the doctrine, that by the ratification of the sale the *legal* title was divested from the former owner and vested in the purchaser. As I shall attempt to show further on, none of the cases cited to maintain that position go so far. Certain it is that this Court has more than once laid down a different principle. For instance, in *Saunders* v. *McDonald*, 63 Md. 508, in referring to a case where the purchase-money had been paid and the sale finally ratified, but no deed was made by the trustee, the Court said, "the effect of the sale and the payment of the purchase-money would be only to invest the purchaser with *the mere* equitable estate in the premises sold and not the legal title." It may be questioned whether the Court has ever gone further in stating the character of the interest of a purchaser at a trustee's sale, before the execution of a deed, than to hold that such equitable title is available for defending his right of possession in cases where the right of possession is an essential fact in determining the rights of the parties to the action. This is the character of the cases cited in the opinion to sustain the position that there is in such circumstances a change in the legal title. Without citing from all the cases referred to in the opinion I think it sufficient to quote from the case of *Lannay's Lessee* v. *Wilson*, 30 Md. 550,

as showing most lucidly the correct doctrine on the subject. That was an action of ejectment and the defendants had received no deed from the trustee. It was claimed that because of the absence of a deed, the defendants had no title and therefore the plaintiff under other facts in the case could recover. The Court said: "A sale by a trustee, appointed by a decree for the purpose, is a judicial sale, and binds and concludes all the parties to the cause who may have the right or claim; and the Court passing the decree had ample power to make its jurisdiction effectual by putting the purchaser in possession of the premises sold by its authority. And though the decree does not operate as a conveyance of the legal title, the purchaser holding possession under it, does not hold wrongfully or unlawfully; and consequently, all right of *possession* of those bound by the decree and the proceedings under it, other than the purchaser is divested and taken away and of course with it the right to maintain ejectment. By such title the dry legal title and the right of possession often become completely severed at least for a time—the legal title remaining in some of the parties to the cause, while the equitable estate and right of possession become vested in the purchaser."

So that, even if it be conceded as it must be, that by the sale of the trustee the equitable title and the right of possession passed out of Mrs. Peat into the purchaser, yet the legal title remained in her and therefore the obligation of Mrs. Peat to indemnify the city still remained, until some one else was put in her "place possessed of the leasehold by legal title." *Nickel* v. *Brown* (*supra*). It does not seem to me, decisive of the case, that, after the rent had accrued, and after this proceeding was instituted, and the liability of Mrs. Peat had become fixed, the trustees made and executed a deed to Brannan and Peat. The right of the city to collect the rents from Mrs. Peat was complete when the suit was brought. The rent had accrued and become due, during the period when the legal title was in her, and the suit was brought before she had been divested of the title. Why should the deed divest the

city of its right of action? Does the case in 4th Gill, *Hatton v. Hunter,* warrant such a conclusion? That was an action of trespass *q. c. f.* in which the issue was as to the right of possession at the time of the commission of the acts complained of by the plaintiff. The plea of *liberum tenementum* was interposed, the effect of which was to admit a colorable possession in the plaintiff, but to deny a rightful possession, because the freehold was in the defendant with right of immediate possession. Thus was raised the issue which enabled the defendant to show that by operation of law the freehold was in the plaintiff. The deed of the trustee was therefore admissible because, upon the principle of relation it operated retrospectively. But it is obvious, as it seems to me, that the relation itself does not occur until the deed has been executed and delivered, and if in the meantime rights of third parties have intervened, it cannot destroy these rights. The deed will undoubtedly enable the grantee to protect his title to and interests in the property, and it does this by clothing him with a legal title from the day of sale. But how can it effect the rights of third persons, so as to take away a right of action? I cannot perceive, therefore, that the deed of the trustee can operate to divest any rights of the appellant, which was complete when the suit was brought.

Nor can the fact, that, under the circumstances of this case, the purchaser of the term ought to indemnify the appellee, for what she might have to pay on account of rents accruing after the sale, affect the case. Her obligation grows entirely out of the privity of estate. It is her position relatively to the property that raises her liability, and it is not founded upon equitable considerations. A person about to make sale of a term, may protect himself by seeing to it, that the deed conveying it shall be duly executed, delivered and recorded; but if she does not, she takes the risk of being liable for the rents, until the legal title is invested in the purchaser. The present action is an equitable action; but the defendant's equity is not to get rid of a legal liability. Whatever equity she has is not against the city, which has paid money for which she was lia-

ble, but if she have any it is against the purchasers who have not paid the rents which accrued after their purchase.

Without discussing them, I will add that I think, there was no error in the rulings upon the other questions involved in the appeal. I am of the opinion that the judgment should have been reversed.

(Filed December 6th, 1901.)