Veve et al., Demandantes y Apelantes, *v.* The Fajardo Sugar Growers', Association, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre resolución de contrato de arrendamiento.

No. 2145.—Resuelto en junio 25, 1921.

Arrendamiento—Insolvencia de Corporación Arrendataria—Extinción de Arrendamiento.—La mera insolvencia de una corporación extranjera, acompañada de una venta judicial de su activo en jurisdicción distinta de la de

su domicilio, y seguida de una cesación de sus negocios en aquella jurisdicción, habiéndose pagado constantemente los cánones, no produce *ipso facto* el efecto de extinguir un contrato de arrendamiento convenido por dicha corporación como arrendataria.

ID.—CESIÓN DEL ARRENDAMIENTO—EFECTOS DE LA CESIÓN DEL ARRENDAMIENTO—SUBARRENDAMIENTO.—En la cesión de arrendamiento, el arrendatario trasmite íntegro su derecho, sin añadir ni quitar cosa alguna, sin que se altere, en cuanto a su fondo substancial, el contenido de la relación existente entre él y el arrendador, mientras que en el subarriendo todas las alteraciones son posibles, siempre que naturalmente no redunden en perjuicio del arrendador que no ha intervenido en el contrato; así, por ejemplo, el subarriendo podrá referirse a parte tan sólo de la cosa arrendada, podrá estipularse duración distinta, precio mayor o menor, etc., y se acabará de formar el exacto concepto de uno y otro acto. Esta es la diferencia esencial entre los actos distintos de que tratamos. En la cesión el arrendatario transmite en absoluto su derecho, su personalidad desaparece, quedan solamente en la relación jurídica dos personas, el arrendador y el cesionario, que se convierte en arrendatario. En el subarriendo no desaparece personalidad alguna, hay dos arriendos y dos relaciones jurídicas diferentes, aunque íntimamente ligadas y relacionadas la una con la otra.

ID.—ID.—ARRENDADOR—ARRENDATARIO.—Una cesión hecha por el arrendatario no afecta a su subsiguiente responsabilidad por virtud de las estipulaciones expresas contenidas en el contrato de arrendamiento; y aunque la cesión sea por ministerio de la ley y la propiedad fuere quitada al arrendatario sin su consentimiento, dicho arrendatario continúa no obstante siendo responsable por virtud de sus expresas estipulaciones. La razón para la continuada responsabilidad del arrendatario es que si bien por cesión la relación de interés (*privity of estate*) entre el arrendador y el arrendatario termina, queda todavía el nexo contractual (*privity of contract*) entre ellos creada por el contrato, la que no queda afectada por la cesión y el arrendatario continúa aún responsable por su propio contrato por razón del nexo contractual.

ID.—CESIONARIO DEL ARRENDAMIENTO—OPCIÓN DE PRÓRROGA DEL ARRENDAMIENTO.—El cesionario de una propiedad arrendada substituye al arrendatario en todo el interés del arrendatario y en el beneficio de todas las estipulaciones y convenios del arrendador que son anexos y van con la propiedad, incluyendo el beneficio del contrato o convenio del arrendador de hacer una renovación.

ID.—DAÑOS Y PERJUICIOS POR DESTRUCCIÓN DE ARBOLES EN LA FINCA ARRENDADA.—La responsabilidad a que queda sujeto el cesionario es por infracción de las estipulaciones del contrato que pueden ocurrir después de la cesión, y no por aquéllos que puedan haber tenido lugar por culpa del arrendatario anterior a ella.

ID.—DAÑOS Y PERJUICIOS—DEMANDA PREMATURA.—El peso de las autoridades está indudablemente en favor de la doctrina de que no procede ninguna acción por incumplimiento de un pacto de dejar la propiedad en buenas condiciones hasta que expire el arrendamiento.

Los hechos están expresados en la opinión.

Abogado de las apelantes: *Sr. J. Tous Soto.*

Abogado de la apelada: *Sr. L. Muñoz Morales.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Los apelantes iniciaron este pleito para que se decretase la terminación, resolución y extinción o rescisión de un contrato de arrendamiento otorgado a favor de The Esperanza Central Sugar Company, una corporación extranjera, la nulidad e ineficacia de ciertos subsiguientes traspasos, y como consecuencia de tales pronunciamientos solicitados, que la demandada reintegre a los demandantes la posesión de la finca arrendada y se les condene a pagar los daños y perjuicios.

La corte inferior después de celebrado el juicio, declaró sin lugar la demanda, siendo los siguientes los errores que han sido alegados:

"1. La corte inferior incurrió en error al no estimar que en la demanda se ejercita, en primer término, la acción para obtener la declaración de que el contrato de arrendamiento se halla resuelto o extinguido, o en su defecto, vencido, o en defecto de ello, rescindido, y que, en segundo término, y como consecuencia de aquella declaración, se ejercita la acción reivindicatoria.

"2. La corte inferior incurrió en error al no estimar que el contrato de arrendamiento se halla resuelto o extinguido, y como consecuencia de ello, que es procedente la acción reivindicatoria ejercitada en la demanda.

"3. La corte inferior incurrió en error al no estimar que el contrato de arrendamiento se halla vencido, y no ha sido renovado en forma alguna, y que, como consecuencia de ello, es procedente la acción reivindicatoria ejercitada en la demanda.

"4. La corte inferior incurrió en manifiesto error al apreciar la prueba en relación con la existencia de montes en la finca arrendada, al empezar a regir el contrato de arrendamiento, y su destrucción porterior por la primitiva arrendataria y la demandada, y al no declarar rescindido dicho contrato de arrendamiento, y como consecuencia de ello, con lugar la acción reivindicatoria ejercitada en la demanda.

"5. La corte inferior incurrió en error manifiesto al no estimar que las demandantes han sufrido daños y perjuicios, por concepto de destrucción de los montes, que ascienden a siete mil dólares.

"6. La corte inferior incurrió en error porque habiendo estimado probados los productos de la finca durante la tenencia o posesión de la demandada, después de junio 30, 1917, no condenó a dicha demandada al pago de su importe, ascendente a la suma de cuarenta y cinco mil ciento treinta y un dólares y cuarenta y seis centavos."

El primer señalamiento se funda en citas aisladas de la opinión emitida por el juez sentenciador, que de ser interpretadas razonablemente en relación con su texto difícilmente pueden estar sujetas a la interpretación así sugerida. Pero sea esto como fuere, las cuestiones fundamentales levantadas en las alegaciones y la prueba fueron resueltas en sentido adverso a los demandantes y a no ser que las conclusiones a que de tal modo se llegó no sean justas, cualquier *obiter dictum* contenido en el razonamiento de la corte inferior de ser erróneo puede considerarse que no perjudica.

Las alegaciones quinta y sexta de la demanda cuya veracidad se admite en la contestación, son las siguientes:

"Quinta. Que la corporación arrendataria 'The Esperanza Central Sugar Company' llegó a estado de insolvencia allá para el año 1909, en el cual estado ha quedado definitivamente, sin que se haya rehabilitado en época alguna, liquidándose todos sus bienes y derechos, los que fueron vendidos en pública subasta por el marshal de la Corte de Distrito de los Estados Unidos para Puerto Rico, y como comprendidos entre dichos bienes, fué vendido el contrato de arrendamiento de que se deja hecho mérito, por escritura número 35 ante el notario de San Juan don Andrés B. Crosas con fecha 12 de julio de 1909, habiéndose adjudicado el expresado contrato de arrendamiento de la descrita hacienda 'Aurora,' a la corporación (Colonial Sugar Company), constituída con arreglo a las leyes del Estado de New York y representada por su presidente Edwin Packer.

"Sexto. Que la corporación 'The Esperanza Central Sugar Company' ya en estado de insolvencia, fué declarada, por el Tesorero de Puerto Rico, fuera de los negocios en esta isla desde el día 12 de noviembre de 1910."

Hacemos la siguiente cita de la opinión de la corte inferior, a saber:

"Los hechos sustancialmente, son estos:

"Las demandantes son mayores de edad, residentes en Puerto Rico y la demandada es una corporación, legalmente constituída, haciendo negocios en Puerto Rico, e inscrita en la Secretaría de Puerto Rico.

"Las demandantes son dueñas de la finca 'Aurora' descrita en la demanda; en cuya finca hay y había una parte de montes, sin que la prueba autorice a la corte a fijar una extensión o superficie exacta de tal monte en 1906 y ahora, ni puede la corte declarar probado que era un monte de maderas de construcción; tal monte en la actualidad ha quedado muy reducido y casi todo desmontado o limpio de arbolado y malezas.

"Por escritura de 30 de marzo de 1906, las demandantes arrendaron a la corporación 'The Esperanza Central Sugar Company' que hacía negocios en Puerto Rico, la referida hacienda 'Aurora' por término de once años, a contar de 10 de junio de 1906; y en la escritura se consignó pacto por el que el arrendatario adquiría el privilegio de renovar, a su voluntad, el arrendamiento, por cinco años más; y las arrendadoras concedieron, también por pacto en dicha escritura consignado, a la arrendataria· el uso de los montes en la finca. El precio o canon estipulado fué de $2,400 dos mil cuatrocientos dollars anuales, en el primer año, y $4,800 anuales los diez años siguientes. Se estipularon algunas condiciones y términos especiales en cuanto a los retoños de cañas, mejoras, etc.

"No se ha alegado ni probado que se hayan dejado de pagar cánones de arrendamiento.

"La corporación 'The Esperanza Central Sugar Company' llegó a estado de insolvencia en 1909 y así ha seguido; y sus bienes y derechos fueron vendidos en pública subasta por el marshal. de la Corte de Distrito de los Estados Unidos para Puerto Rico; y entre esos bienes fué vendido el antedicho contrato de arrendamiento de la 'Aurora'; que se adjudicó a la 'Colonial Sugar Company,' corporación, haciéndose la venta por escritura de fecha 12 de julio de 1909, que, se ha admitido (página 63, record taquigráfico) que fué inscrita en el registro de la propiedad.

"En 12 de noviembre de 1910, el Tesorero de Puerto Rico declaró a 'The Esperanza Central Sugar Company' fuera de los negocios en Puerto Rico.

"En 17 de noviembre de 1909, 'The Colonial Sugar Company' por escritura ante el notario Thos. A. Gamon cedió y traspasó a los síndicos de 'The Fajardo Sugar Growers Association' el contrato de

arrendamiento de la hacienda 'Aurora.' Esta escritura fué inscrita en el registro de la propiedad; se ha admitido el hecho (record taquigráfico).

"Las facultades de los referidos síndicos son las que aparecen de la alegación octava de la demanda; y se tienen por reproducidas en esta opinión.

"La parte demandante ha alegado que los arrendatarios de la 'Aurora' no han usado de la finca con la diligencia de un buen padre de familia, y han talado y destruído el monte haciendo desmerecer la finca. La corte declara que la prueba no demuestra la clase de monte que fuera el de la 'Aurora' ni la cantidad de árboles grandes que hubiera, ni si el monte estaba poblado de árboles de madera de construcción, o en condiciones de replanteo, ni que la demandada haya destruído montes, ni hecho desmerecer la finca. Sí aparece que la demandada ha limpiado y destruído malezas y arbustos de escaso valor y ha cultivado alguna parte del monte. Conforme con su alegación la parte demandante alega daños y perjuicios que no han sido probados. La corte declara que la prueba en estos extremos fué contradictoria, pero ha encontrado más firme y más lógica la prueba de la demandada.

"En 5 de febrero de 1917, la ahora demandada notificó notarialmente a las demandantes como dueñas de la hacienda 'Aurora' que siendo la cesionaria del derecho de arrendamiento que originalmente tuvo 'The Esperanza Central Sugar Company' en cuyo concepto viene teniendo la finca y pagando a las dueñas los cánones de arrendamiento, usaba del derecho de renovación y prórroga por cinco años que en el contrato de arrendamiento se consignó, y así lo notificaba por esta escritura a doña Concepción Veve. Del record aparece admitido (pág. 64) que se notificó lo mismo a doña Josefina Veve.

"La demandada continúa hoy en la posesión de la finca, como arrendataria.

"Las demandantes alegaron que se les ha irrogado por la demandada un perjuicio por la posesión y tenencia de la finca desde el día 30 de junio de 1917, fecha en que alegan las demandantes que venció el contrato de arrendamiento; y que requirieron en esa fecha a la demandada para que las pusiera en posesión de la finca. Se han probado los frutos de la finca. La corte no ha de examinar en detalle el hecho porque entiende que cualquiera que sea la cuantía del producto, no es materia de indemnización si la demandada está poseyendo justa y legalmente, por razón de la prórroga del arrendamiento.''

"Tales son, en realidad, los hechos, como resultan de las alegaciones y pruebas."

En el razonamiento bajo el segundo señalamiento de error parece asumirse sin que se citen autoridades para demostrarlo, que la continuada insolvencia del primitivo arrendatario, la venta judicial de su activo, liquidación de sus negocios y cese en los negocios en Puerto Rico, es equivalente a una disolución final de la corporación. En esta premisa y en un criterio tergiversado de la doctrina enunciada por este tribunal en el caso de *Becerril* v. *Post,* 22 D. P. R. 732 se basa la conclusión de que los términos *subarriendo* y *cesión,* son prácticamente sinónimos, que no existe nexo legal alguno entre los arrendadores y el cesionario demandado, y que los varios traspasos del arrendamiento son nulos y sin ningún valor, no obstante el continuado pago del canon por tal cesionario.

En ilustración de la teoría de los apelantes en este sentido hacemos la siguiente cita del alegato original, a saber:

"Si la cesión de un arrendamiento no produce el efecto de exonerar de responsabilidad al primitivo arrendatario en cuanto al cumplimiento de las obligaciones del contrato de arrendamiento, y la responsabilidad de dicho primitivo arrendatario, para con el arrendador, continúa, es decir, si entre el arrendador y el arrendatario primitivo existe el mismo nexo jurídico después de la cesión, que antes de verificarse ésta, es evidentísimo que si ha admitido expresamente por la parte demandada que la arrendataria primitiva llegó a estado de insolvencia después de celebrado el arrendamiento, en el cual estado ha quedado definitivamente, sin que se haya rehabilitado en época alguna, liquidándose todos sus bienes y derechos, y declarándosela fuera de los negocios en esta isla, la lógica y necesaria conclusión es que la personalidad de dicha arrendataria primitiva ha quedado completamente extinguida. Y si la personalidad de dicha arrendataria ha quedado extinguida; y si el arrendatario no puede substituir su personalidad en el contrato de arrendamiento y eludir el cumplimiento de las obligaciones contraídas en el mismo, mediante una cesión; si, según la doctrina expuesta y citada la cesión de un arrendamiento sólo puede sostenerse cuando continúa la responsabi-

lidad del arrendatario primitivo y subsiste el nexo jurídico entre él
y el arrendador; y si el nexo jurídico entre el arrendador y la arren-
dataria primitiva en este caso se ha roto por la extinción de la perso-
nalidad de la última, y no hay absolutamente nexo alguno contractual
entre el primitivo arrendador (las demandantes) y el cesionario del
contrato de arrendamiento (la demandada), es evidente que dicha
demandada posee las fincas arrendadas sin título alguno para ello,
por haber quedado resuelto y extinguido el contrato de cesión a
virtud de la extinción de la personalidad de la cedente de dicho
contrato, o sea, la primitiva arrendataria, y resueltos y extinguidos,
asímismo, todos cuántos derechos pudiera invocar la cesionaria, en
relación con dicho contrato de cesión, para con su cedente.''

En un *memorandum* adicional de autoridades sometido
después de la vista, se resume la cuestión de modo más pre-
ciso en esta forma:

"Esta cesión, '*única* con la cual puede transigirse,' según Scae-
vola, que 'deje subsistente la responsabilidad del arrendatario' según
Manresa, apesar de la cual 'continúa la responsabilidad del arrendata-
rio' que 'no perjudica a éste' que 'deje a sus derechos garantidos,'
y 'conserva todas las características del contrato de arrendamiento,'
según esta honorable corte, no es una cesión absoluta, no es *subro-
gación* del arrendatario por el subarrendador, no es una novación de
contrato, no crea nexo jurídico entre un tercero (sub-arrendatario)
y el dueño; es en suma para todos sus efectos, como afirma Scaevola,
un sub-arrendamiento.''

Por este medio de razonar dentro de un círculo, par-
tiendo del punto de mira de Scaevola cuyas conclusiones
fueron descartadas por esta corte en el caso de *Becerril* v.
*Post,* procediendo lentamente a pesar de una clara inconse-
cuencia (*non sequitur*) a través del criterio opuesto de Man-
resa que fué adoptado por esta corte por estar en entero
acuerdo con la doctrina americana, y volviendo finalmente
al punto de partida, el apelante olvidaría toda señal de dis-
tinción entre un contrato de subarriendo y una cesión y eli-
minaría en efecto el precedente establecido por nuestra de-
cisión en el caso arriba citado.

El caso en el cual los apelantes parecen insistir más vi-

gorosamente por entender que sostiene este criterio es el de *Audubon Hotel Company* v. *Braunning,* 120 La. 1087, del cual, después de hacer una amplia cita de la opinión emitida en el mismo, el abogado parece establecer la siguiente conclusión:

"Lo que se dice del sub-arrendatario es aplicable al cesionario, si no existe vínculo o nexo contractual entre el dueño, o primitivo arrendador, y el cesionario. Habría este vínculo sólo cuando el arrendador hubiere consentido expresamente en la cesión, librando al arrendatario primitivo de responsabilidad, subrogando en lugar de éste el sub-arrendatario y novándose la obligación."

En ausencia de citas o autoridades para sostener la hipótesis de que la mera insolvencia de una corporación extranjera unida a la venta judicial de su activo en una jurisdicción que no sea la de su domicilio, seguida del cese en los negocios en dicha otra jurisdicción, produce *ipso facto* la extinción de un contrato de arrendamiento celebrado con tal corporación como arrendataria, no obstante el continuado pago del canon, sería bastante para decir que la certeza de la proposición así sugerida en manera alguna es evidente por sí misma. Sin embargo, como punto de partida para investigación en este sentido podemos hacer referencia, de paso, a las siguientes citas: Nota al caso *Hastings Corporation* v. *Letton,* 3 British Ruling Cases, 617, 627; nota al de *People* v. *O'Brien,* 2 L. R. A. 255, 256; nota al de *Leonard* v. *Hartzler,* 50 L. R. A. (N. S.) 383; 14 Corpus Juris, páginas 884, sección 3063; página 1118, sección 3734; página 1349, sección 4056; 7 Corpus Juris, página 28, sección 25; 12 R. C. L., página 113, sección 89.

Una exposición completa y exacta de lo que resolvió esta corte en el caso de *Becerril* v. *Post, supra,* puede verse en el sumario el cual es perfectamente claro y es como sigue:

"El arrendamiento es un contrato por el cual una de las partes se obliga a dar a la otra para cierto tiempo y por precio cierto el uso o disfrute de una cosa o de su trabajo.

"De acuerdo con los artículos 1453 del Código Civil Revisado y 2, número 5, de la Ley Hipotecaria, el contrato de arrendamiento de bienes inmuebles por un período que exceda de seis años, tiene el carácter de derecho real sobre la finca arrendada.

"El arrendatario puede sub-arrendar la finca arrendada sin necesidad del consentimiento del arrendador, cuando en el contrato no se le prohiba expresamente.

"De igual modo está facultado el arrendatario para ceder el arrendamiento sin necesidad de solicitar y obtener previamente el consentimiento del arrendador, cuando la cesión no se prohibe expresamente en el contrato. En ausencia de una prohibición expresa o de una consecuencia claramente inmoral, rige el principio de que no debe oponerse obstáculos a la libre contratación.

"La cesión de un arrendamiento no exonera al primitivo arrendatario de su obligación de pagar la renta estipulada, aunque el arrendador haya consentido tal cesión y percibido la renta del cesionario, a no ser que al arrendador haya aceptado la transmisión del arriendo y renunciado al arriendo original."

En el tomo 16 de R. C. L., página 877, sección 381, puede verse una admirable condensación de la doctrina sentada por la Corte de Louisiana en el caso de *Audubon Hotel Company* v. *Braunning* en el que tanto insisten los apelantes, donde se cita dicha doctrina en apoyo de la siguiente proposición:

"En lo que respecta al primitivo arrendador y el sub-arrendatario no existe nexo contractual o de interés y por tanto el sub-arrendatario no adquiere, por regla general, por virtud del sub-arriendo meramente ningún derecho para hacer cumplir los acuerdos o convenios del arrendador contenidos en el primitivo arrendamiento."

Y la Corte Suprema de Louisiana en el caso de *Frank* v. *Flyint,* 132 La. Rep. 327, refiriéndose al caso de *Audubon Hotel, supra,* dice lo siguiente:

"En un reciente caso esta corte resolvió que no existía nexo contractual entre un arrendador y un sub-arrendatario a falta de un contrato expreso por parte del segundo."

Observando la pauta que nos da Ruling Case Law, *supra,*

ý atendiendo a la nota del caso de *Mitchell* v. *Young,* 117 A.
S. R. 89, encontramos en la página 99 lo siguiente:

"Ya se ha advertido que el cesionario de un arrendatario está
en relación contractual con el arrendador y por tanto obligado por
las estipulaciones del contrato que van anexas al fundo incluyéndose
el convenio de pagar un canon de arrendamiento: Véase la nota a
los casos de *Washington Natural Gas Co.* v. *Johnson,* 10 Am. St.
Rep. 560; *Hogg* v. *Reynolds,* 61 Neb. 758, 87 Am. St. Rep.
522, 86 N. W. 479; *Campbell* v. *Gates,* (Tex. Civ. App.) 51
S. W. 268; pero no existe relación contractual entre un sub-arrenda-
tario y el primitivo arrendador, y el segundo no puede demandar
al primero por virtud de estipulaciones del primitivo contrato, ni
hacerle responsable por el canon allí estipulado. Véase la nota a
los casos de *Washington Natural Gas Co.* v. *Johnson,* 10 Am. St. Rep.
564; *William* v. *Michigan Cent. R. R. Co.,* 133 Mich. 448, 103 Am.
St. Rep. 458, 95 N. W. 708; *Coles* v. *Marquand,* 2 *Mill,* 447; *Harvey*
v. *McGrew,* 44 Tex. 412; *Missouri, etc., Ry. Co.* v. *Keshey* (Tex.
Civ. App.), 83 S. W. 1102. Pero mientras un sub-arrendatario no
puede ser demandado por las estipulaciones del primitivo arrenda-
miento, puede ser privado de la posesión si han sido infringidas.
*Geer* v. *Boston Little Circle Zinc Co.,* (Mo. App.) 103 S. W. 151."

Manresa en el tomo 10 de sus Comentarios, página 484,
al establecer las diferencias de los elementos esenciales de
sub-arriendos y cesiones, en la página 484, dice lo siguiente:

"Agréguese a estas diferencias la consideración de que en la ce-
sión de arrendamiento, el arrendatario trasmite íntegro su derecho,
sin añadir ni quitar cosa alguna, sin que se altere, en cuanto a su
fondo substancial, el contenido de la relación existente entre él y el
arrendador, mientras que en el subarriendo todas las alteraciones son
posibles, siempre que naturalmente no redunden en perjuicio del
arrendador que no ha intervenido en el contrato; así, por ejemplo,
el subarriendo podrá referirse a parte tan sóla de la cosa arrendada,
podrá estipularse duración distinta, precio mayor o menor, etc., y
se acabará de formar el exacto concepto de uno y otro acto. Esta
es la diferencia esencial entre los actos distintos de que tratamos. En
la cesión el arrendatario transmite en absoluto su derecho, su perso-
nalidad desaparece, quedan solamente en la relación jurídica dos
personas, el arrendador y el cesionario, que se convierte en arrenda-

tario. En el sub-arriendo no desaparece personalidad alguna, hay dos arriendos y dos relaciones jurídicas diferentes, aunque íntimamente ligadas y relacionadas la una con la otra.''

Algunas breves citas de otras fuentes jurídicas pondrán inmediatamente de manifiesto la falacia del argumento de los apelantes y la diferencia esencial que hay entre un sub-arriendo y una cesión del arrendamiento basadas en la distinción que ha pasado enteramente por alto el abogado de los apelantes, y que hay entre nexo contractual y de interés:

''Un sub-arriendo puede generalmente definirse como una transacción por la cual un arrendatario concede un derecho en la propiedad arrendada inferior al suyo, conservando el derecho de reversión; y un sub-arrendatario es una persona que arrienda toda o una parte de la propiedad arrendada al arrendatario por un término menor al primitivo, dejando un derecho de reversión en el primer arrendatario. Un sub-arriendo crea un nuevo estado que depende o ha salido del arrendamiento original aunque distinto. Una cesión es distinta a un sub-arriendo y por tanto no es una infracción de una cláusula contra el sub-arriendo.'' 16 R. C. L. p. 869, sec. 373.

''No existe ni nexo contractual ni de interés entre un sub-arrendatario y el primitivo arrendador y el primero no incurre en responsabilidad alguna directamente con el segundo por la mera razón del sub-arriendo para el pago del canon estipulado en el primitivo arrendamiento, ni para el cumplimiento de las demás cláusulas por parte del arrendatario. Y como la relación convencional de arrendador y arrendatario creada por contrato, expreso o tácito, debe existir entre las partes para que pueda establecerse una acción por el uso y ocupación, esta acción no procederá a instancia del primitivo arrendador contra un sub-arrendatario. En algunos Estados esta regla de la Ley Común respecto a la irresponsabilidad de un sub-arrendatario para con el primitivo arrendador por el canon ha sido cambiada por el estatuto que considera en cierto modo al sub-arrendatario en la misma condición que el cesionario.'' *Idem,* p. 879, sec. 384.

''La cesión hecha por un arrendatario es una transacción por la cual él traspasa todo su derecho a la propiedad arrendada o parte de ella por el término no vencido del primitivo arrendamiento.'' *Idem,* p. 824, sec. 319.

''Por regla general la facultad de hacer una cesión es inherente a la condición de un arrendatario a menos que sea restringida por

las cláusulas del arrendamiento. Aunque un arrendamiento es nece-
sariamente un contrato, sin embargo, es un contrato que crea un
derecho (*estate*) y por la Ley Común un derecho es suceptible de
cesión aunque no lo sea un contrato y existe la facultad para ceder
sin la palabra 'cede' en el contrato de arrendamiento." *Idem*, p.
828, sec. 323.

"Una restricción general al derecho de cesión se ha resuelto que
comprende solamente una cesión voluntaria y no una involuntaria.
Si, en cambio, el arrendador desea evitar un traspaso involuntario
puede disponer expresamente en el contrato de arrendamiento que
tal traspaso producirá una confiscación y las cortes darán efecto a
tal disposición." *Idem*, p. 834, sec. 333.

"Es regla generalmente reconocida tanto en Inglaterra como en
este país que el traspaso de un arrendamiento como consecuencia de
procedimientos de quiebra involuntaria o insolvencia no están com-
prendidos en una restricción general contra una cesión." *Idem*, p.
836, sec. 335.

"Una cesión hecha por el arrendatario no afecta a su subsiguiente
responsabilidad por virtud de las estipulaciones expresas contenidas
en el contrato de arrendamiento y esto es así aunque la cesión sea
con el consentimiento del arrendador; y aunque la cesión sea por
ministerio de la ley y la propiedad fuere quitada al arrendatario sin
su consentimiento, dicho arrendatario continúa no obstante siendo
responsable por virtud de sus expresas estipulaciones. La razón para
la continuada responsabilidad del arrendatario es que si bien por la
cesión la relación de interés (*privity of estate*) entre el arrendador y
el arrendatario termina, queda todavía el nexo contractual (*privity
of contract*) entre ellos creada por el contrato, el que no queda afec-
tado por la cesión aunque hecha con el consentimiento del arrendador,
y el arrendatario continúa aun responsable por su propio contrato
por razón del nexo contractual (*privity of contract*). *Idem*, p. 843,
sec. 343.

"El arrendatario es responsable al arrendador por el convenio
expreso de pagar un canon aun cuando haya él cedido el arrenda-
miento con el expreso consentimiento del arrendador, en tanto no
haya una exoneración específica de responsabilidad, y esto es así
aunque el contrato de arrendamiento disponga que éste no será cedido
sin el consentimiento del arrendador y hubiera sido consentida la
cesión por dicho arrendador. Ni tampoco queda afectada la conti-
nuada responsabilidad del arrendatario por cánones no satisfechos
por el hecho de que el arrendador haya recibido pagos de cánones

del cesionario. La razón de esto es que el convenio de pagar un canon es inherente al interés en la cosa como convenio real, y obliga al cesionario en los términos del contrato por razón de su nexo en el interés (*privity of estate*) a pagar la renta que resulte durante su dominio y posesión de la propiedad; de modo que, después de una cesión del arrendamiento el arrendador tiene una garantía doble y mancomunada para el pago de su canon, pudiendo ir contra una u otra, o ambas, hasta obtener el pago. Por tanto el recibo del canon del cesionario del arrendatario no implica una novación o exoneración del arrendatario, sino que es la determinación de un derecho que correspondía al arrendador como incidental a la cesión.'' *Idem*, p. 846, sec. 346.

''El establecimiento de una acción por el arrendador contra el cesionario no afecta por sí a la responsabilidad del arrendatario· para con el arrendador. El pago del canon por el cesionario es, sin embargo, un pago *pro tanto* hecho por el arrendatario en lo que respecta a la continuada responsabilidad del segundo para con el arrendador.'' *Idem*, p. 847, sec. 347.

''El cesionario de una propiedad arrendada substituye al arrendatario en todo el interés del arrendatario y en el beneficio de todas las estipulaciones y convenios del arrendador que son anexos y van con la propiedad, incluyendo el beneficio del contrato o convenio del arrendador de hacer una renovación, y por regla general el beneficio de una opción de compra también pasa al cesionario de las estipulaciones del contrato. Por otra parte el cesionario no puede demandar por incumplimiento en las estipulaciones que tuvieron lugar antes de hacérsele la cesión, ni tampoco por incumplimiento en lo convenido cuyos beneficios no van con el arrendamiento.'' *Idem*, p. 848, sec. 348.

''Un cesionario del arrendamiento tiene un nexo en el interés ·(*privity of estate*) con el arrendador y es responsable a él personalmente por el incumplimiento de las estipulaciones del arrendatario que son anexas y lleva consigo al arrendamiento y que se infringen mientras está él en posesión de la propiedad arrendada, y aunque la cesión se verifique por efecto de la ley el cesionario adquiere sujeto a las responsabilidades generales de un cesionario voluntario.'' *Idem*, p. 849, sec. 349.

''El comprador de una propiedad arrendada en una venta judicial es responsable al arrendador en el mismo grado que cualquier otro cesionario tan pronto como obtiene el título, entre o no realmente en posesión; y un comprador por virtud de una ejecución de hipoteca o escritura de venta condicionada es asimismo responsable por el

canon como un cesionario del arrendamiento. Puesto que un cesionario no es responsable por el canon que resulte antes de tener un nexo en el interés (*privity of estate*) con el arrendador, el comprador de una propiedad arrendada en una venta judicial no es responsable por cánones que resulten después de la venta, sino antes de adquirir el derecho de posesión, y su responsabilidad puede terminarse haciendo cesión del arrendamiento pero no por el mero abandono de la posesión.'' *Idem,* p. 861, sec. 363.

''Una persona en interés (*privity in estate*) es un sucesor en el mismo y no a uno distinto en la misma propiedad.'' *Pool* v. *Morris,* 74 Am. Dec. 68, citado con aprobación en el caso de *Lang* v. *Metzger,* 69 N. E. 493.

''En la obra de Taylor sobre arrendador y arrendatario, sec. 436, se dice que la mera cesión del arrendamiento no trasmite al cesionario sucesión alguna en el contrato y por tanto no crea un nexo contractual. Pero como él adquiere el interés de su cedente, el arrendatario, mediante cesión, queda hecho responsable por el nexo en el interés (*privity of estate*) o sucesión en el interés que tiene el arrendatario por virtud del arrendamiento.'' *Conway* v. *Ford,* 64 S. E. 448.

''Nexo implica sucesión. Aquél que está en relación de interés está en el lugar o sitio del dueño de quien deriva su título, y adquiere de tal modo sujeto a la obligación que lleva consigo.'' *Boughton* v. *Harder,* 46 App. Div. 352.

''El comprador de la finca arrendada en una venta judicial tan pronto como obtiene el título tiene un nexo en el interés (*privity of estate*) con el arrendador, y es por tanto responsable a él del pago del canon. *Baltimore* v. *Beat,* 93 Md. 696, 50 Atl. 152, 698; *Astor* v. *L'Amoreux,* 4 Sandf. 524; *Herbaugh* v. *Zentmyer,* 2 Rawle, 159; *Thomas* v. *Connell,* 5 Pa. 13.'' 52 L. R. A. (N. S.) 988.''

El razonamiento bajo el tercer señalamiento de error es prácticamente una repetición del contenido en el segundo señalamiento y se desarrolla como aparece en la siguiente cita:

''El derecho de renovación, que envuelve la cláusula quinta de la escritura de arrendamiento, fué concedido a The Esperanza Central Sugar Company. En virtud de tal convenio, dicha primitiva arrendataria, al vencimiento del contrato, pudo haber ejercitado el derecho de renovación y requerido a las demandantes para otorgar la

correspondiente escritura de renovación, pero como la personalidad de The Esperanza Central Sugar Company se había extinguido ya, al vencimiento del contrato, es obvio que no podía ejercitar tal derecho de renovación, ni verificar el correspondiente requerimiento.

"¿Pudo ejercitar ese derecho la cesionaria The Fajardo Sugar Growers' Association?

"Manifiestamente no, porque para ello sería indispensable la existencia de una relación jurídica o nexo contractual entre dicha cesionaria (la demandada) y las demandantes arrendadoras, y tal nexo o relación jurídica ya hemos visto que no existe, y que se ha probado que nunca ha existido."

La contestación a esta proposición en tanto no haya sido ya resuelta puede encontrarse en los siguientes principios elementales:

"Es regla general bien reconocida que el beneficio del convenio del arrendador de renovar lo lleva consigo la propiedad arrendada y puede ponerlo en vigor un cesionario; y como consecuencia de esta regla después de haber el arrendatario cedido el contrato pierde él su derecho a poner en vigor la renovación puesto que tal derecho ha pasado a su cesionario." 16 R. C. L. p. 897, sec. 402.

"Una cesión produce el efecto de traspasar al cesionario todo el derecho, título o interés del cedente en la cosa cedida." 5 C. J. 946 y nota 47.

"Un convenio del arrendador para la renovación es uno que lleva consigo la propiedad y el cesionario del arrendamiento tiene derecho al beneficio del mismo." Tiffany, Arrendador y Arrendatario, tomo 2, p. 1548, sec. 230.

"Un convenio de renovar un arrendamiento va anexo a la propiedad." Nota al caso de *Glidden* v. *Second Avenue Investment Co.*, L. R. A. 1915, C, 219.

El cuarto señalamiento de error envuelve no solamente una cuestión de hecho, sino varias cuestiones de derecho interesantes que podrían haberse desarrollado más ampliamente por las partes con posible ventaja para una u otra de ellas. Sin embargo, en ausencia de tal estudio acabado en los alegatos, no es necesario que nos ocupemos ahora en considerar cada una de las cuestiones así sugeridas. Sea cual fuere la

conclusión final a que lleguemos respecto a estas cuestiones, parece ser razonablemente claro que la demandada en este pleito no es responsable por el menoscabo ocasionado por su causante, el primitivo arrendatario.

"La responsabilidad a que queda sujeto el cesionario es por infracción de las estipulaciones del contrato lo que puede ocurrir después de la cesión, y no por aquéllas que puedan haber tenido lugar por culpa del arrendatario anterior a ella." Tiffany, Arrendador y Arrendatario, tomo 1, pág. 971, sec. 158.

"El cesionario no es responsable por infracciones ocurridas con anterioridad a la cesión." 24 Cyc. p. 982.

"El cesionario no es responsable por virtud de los pactos o convenios del arrendatario que fueron incumplidos antes de adquirir la cosa arrendada; aunque la obligación de un pacto o convenio va anexo a la cosa arrendada hasta el incumplimiento, deja entonces de seguir anexo por haberse convertido en una causa de acción. Así pues en el caso de un contrato de arrendamiento de aceite el cesionario no es responsable por el incumplimiento del pacto con el arrendatario en hacer un pozo dentro de un término fijado si no adquirió la cesión hasta después del tiempo especificado, y por consiguiente después de haberse infringido el convenio." 16 R. C. L. p. 849, sec. 349.

"Cuando un arrendatario destruye árboles en circunstancias que constituyen un menoscabo procede inmediatamente una acción por parte del que tiene el derecho de reversión (*reversioner*) para recobrar daños y perjuicios ocasionados al fundo." Nota al caso de *Anderson* v. *Cowan,* 106 A. S. R. 310.

Es posible que la demandada en este pleito pudiera ser responsable por virtud de un contrato tácito de entregar la propiedad en buena condición al finalizarse el término del contrato, obligación que parece llevar consigo la propiedad, pero tal no fué la teoría de los apelantes en la corte inferior y este aspecto de la cuestión no ha sido sugerido en apelación como que se relaciona con el punto. Podemos sin embargo, hacer la siguiente cita:

"El peso de las autoridades está indudablemente en favor de la doctrina de que no procede ninguna acción por incumplimiento de

un pacto de dejar la propiedad en buenas condiciones hasta que expire el arrendamiento.   La razón de esta regla es clara, pues aunque el arrendatario durante el término permita que la propiedad esté en mala condición, él tiene durante el término un *locus penitentias* de poner la propiedad en las condiciones exigidas y no puede decirse, debido a su condición en cualquier fecha durante el término que no estará en la debida condición al finalizar dicho término.   Por otra parte en *Sheppard's Touchstone* (p. 173) se anuncia la regla de que 'si una persona conviene en dejar un monte en la misma condición en que lo encuentra y corta árboles, en este caso se infringe el convenio inmediatamente por haberse hecho imposible de cumplirse debido a su propio acto;' y los casos de este país han reconocido esta doctrina y resuelto que si el daño causado por el arrendatario es uno que no puede repararse, el arrendador no tiene que esperar hasta el vencimiento del arrendamiento para demandar por incumplimiento del pacto de dejar la propiedad en buena condición.''   16 R. C. L. p. 790, sec. 284.

En vista de las circunstancias no podemos decir que la corte inferior al aquilatar la prueba respecto al corte de madera y negarse a decretar la terminación o rescisión del arrendamiento y entrega de la propiedad arrendada debido a dicho alegado incumplimiento, cometió ningún error que exigiera la revocación de la sentencia.

Se infiere, pues, que el error, si alguno se cometió, al no declararse probado que los apelantes sufrieron daños y perjuicios en la suma de $7,000 debido a la destrucción de montes no es perjudicial, y que el sexto señalamiento que no es sino consecuencia de las proposiciones ya resueltas, debe correr la misma suerte.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.